# Baum's Appeal.

1. When one makes, seals and delivers a deed, to a stranger, to be held by him, until certain conditions be performed, and then to be delivered to him to whom the deed is made, to take effect as his deed, this is the delivery of a deed as an escrow.

2. Generally, an escrow takes effect from the second delivery, the title not being perfected in the grantee, until the happening of the condition; but the grantor, when the deed has been placed in the hands of a third party as an escrow, cannot, after the happening of the act on which delivery is conditional, prevent delivery taking effect by getting possession of the deed.

3. A bill in equity will lie, to compel the delivery of a deed held in escrow, where the grantee has done all in his power to fulfil the condition, and the fulfilling of it was prevented by the sole act of the grantor.

4. A delivered a deed to B, to be by him delivered to C, on condition that C pay a note, part of the purchase money, within ten days. After the expiration of the ten days, A agreed with C to extend the time two days, and again extended the time one day, and then said: "Let it rest a few days and if I need the money I will come and see you." He did not ask for the money. Five days after, C tendered the amount of the note, but B refused to deliver the deed to him, giving as a reason that he had been notified by A not to deliver it. *Held*, (*a*) That the delivery of the deed by A to B was a delivery in escrow; (*b*) That A could not prevent the delivery of the deed to C; (*c*) That a Court of Equity will compel the delivery of said deed to C.

May 10th, 1886. Before Mercur, C. J., Gordon, Paxson, Trunkey, Green and Clark, JJ. Sterrett, J., absent.

Appeal from the Court of Common Pleas of *McKean county:* In Equity: Of January Term, 1885, No. 61.

This was an appeal by B. W. Baum from a decree of said court dismissing a bill in equity in which he was plaintiff, and R. W. Evans and G. A. Berry were defendants.

The following are abstracts of the bill and answers:

1. That on the 9th day of May, A. D., 1877, I entered into a contract with the defendant, R. W. Evans, for the purchase of a certain piece or parcel of land, situate in the township of

Bradford, McKean county, Pennsylvania, which the said Evans agreed to convey to me by a good and sufficient deed of general warranty, for which I agreed and was to pay him the sum of one thousand dollars, in the manner following, to wit: My notes, one for five hundred dollars, payable ten days after the date of the deed for said premises, to be made and executed by him and wife; and my note for five hundred dollars, payable in six months from said date.

2. That pursuant to said agreement, the said R. W. Evans and wife executed and duly acknowledged a deed of said premises to me; and I, on my part, executed and delivered to the said Evans my two notes for five hundred dollars each, payable as aforesaid, whereupon it was agreed that the said deed should be, and the same was, left with the defendant, George A. Berry, the attorney of said Evans, to be delivered to me upon the payment of said first mentioned note of five hundred dollars, which was also left with said Berry by said Evans.

3. That thereafter I called on the defendant, Berry, for the purpose of paying said first note and securing my deed, where and when I tendered payment of said note, and handed to said Berry the full amount due thereon, including principal and interest, which money the said Berry received and retained, but refused to deliver said deed and note; that I have at all times been ready and willing to, and have fully kept and performed said agreement on my part; that the defendant Berry is in possession of said deed and notes, which are material evidence whereby my rights in the premises may be determined.

4. That the said R. W. Evans fraudulently refuses to deliver said deed, but on the contrary, in violation of his said conveyance of said premises to me, has taken possession thereof, and has commenced mining operations thereon, in disregard and in violation of my rights and equities, and to the great waste and destruction to the said lands and to my rights therein. I pray,

1. That the defendant, Evans, be decreed to deliver the deed and note paid.

2. That defendant Berry be ordered and adjudged to produce the deed to the court.

3. Other relief, etc.

Answer of defendant, R. W. Evans:

1. That the truth of said contract is as follows: I did agree to sell to said B. W. Baum the ten acres of land described in said first paragraph, for the sum of one thousand dollars, one half cash and the balance to be secured by the judgment exemption note of said B. W. Baum at six months,

and in fulfilment of said contract (which was only verbal) I made and executed a deed of general warranty for the said land to said B. W. Baum. When this deed was shown to B. W. Baum he stated that he had not the five hundred dollars to make the cash payment, but offered his note at ten days in payment of said five hundred dollars, said note being simply his commercial paper. This I would not accept, knowing Baum to be irresponsible, and it was then agreed that the deed, duly executed, and the two notes should be placed in the hands of G. A. Berry, an attorney who had drawn the deed, and to be by him held, with the understanding that if the note was paid at the expiration of the ten days, the deed would be delivered to said B. W. Baum. The sale was for cash, and the waiting was a matter of grace, and the deed never was delivered to Baum, nor were Baum's notes accepted in payment.

2. It is denied that the deed and notes were left with Mr. Berry as my attorney. They were left with him in escrow, as the mutual representative of both parties.

3. As to the fact of the tender made by said Baum to said Berry, I deny that such tender was made at the maturity of the note, the same having been past due some sixteen days before any payment was tendered to said Berry.

4. I deny that I ever conveyed said lands to said Baum but only agreed to do so upon the contingency of his paying the note when due, and he himself, acting in bad faith, failing to make such payment, and intending to fraudulently take advantage of certain developments in the immediate vicinity of said lands, violated the agreement on his part, and his application to this court is against equity and good conscience.

5. I aver that said B. W. Baum has no title or claim of title to said lands (I never accepting the notes nor delivering the deed for the same), but has acted fraudulently and against equity in the premises, and is not entitled to any relief.

Answer of G. A. Berry :

1. I deny that I received the deed and notes as the attorney of R. W. Evans. They were placed with me by both parties in escrow, the deed to be given to Baum upon his paying me the sum of five hundred dollars (the amount of the note) within ten days.

2. The said offer to pay referred to by Baum in the third paragraph of his bill, was made some sixteen days after the maturity of the note, and after I had received notice from Evans not to receive the same. I deny that I received the money in payment, as might be inferred from said paragraph, I refusing to do so, and afterwards, on request of said Baum, took the money simply as a tender. I am now ready

to deliver the said money and note to said Baum, subject to my reasonable charges. I aver that the statements contained in said paragraph are calculated to mislead and are not correct statements of the facts therein referred to. The notes and papers were given me on May 9th. The note was due May 19th, and no offer to pay was made until June.

The following are the facts as reported by the Master, W. D. Brown, Esq.:

The defendant Evans is, and at the time of the filing of the bill, was in the exclusive possession of the ten acres of land described in the first paragraph of the bill, claiming title and the right of possession thereto, and denying the existence of any fact or facts which could give the plaintiff any legal or equitable title to the land, or to its use and occupation.

On, or a short time before, the 9th day of May, 1877, the plaintiff negotiated with defendant Evans for the purchase of the ten acres of land described in the first paragraph of the bill. The terms agreed upon were that upon the execution of the deed the plaintiff should pay the sum of five hundred dollars, cash in hand, and the further sum of five hundred dollars to be secured by the judgment note of the plaintiff, payable in six months. Pursuant to this arrangement, which was in parol, Evans and wife executed a deed of the land, the plaintiff being the grantee therein, and the deed bearing date May 9th, 1877. When the deed was ready for delivery, the plaintiff was not prepared to pay the $500, hand payment, but proposed instead to give his promissory note of $500, payable in ten days. Evans declined to take the note, whereupon it was agreed that the ten day note, the six months' judgment note, and the deed (all of which bore date May 9th, 1877), should be left with defendant Berry as the representative of the parties, with the agreement that should the plaintiff pay the $500 within the ten days Berry should deliver the deed to plaintiff and the six months' judgment note to Evans. The plaintiff did not pay the $500 within the ten days, nor yet at the maturity of the ten day note, allowing the days of grace thereon, but on the 23d day of May the plaintiff, informing Evans that he was required to be at Franklin on important business, and would not return to Bradford, the place of business of defendants, until the evening of Friday, May 25th, and obtained the consent of Evans to wait for the payment until that time. Being detained at Franklin longer than he anticipated, Baum arranged with Evans by telegraph to wait one day longer, viz., until the evening of Saturday, May 26th. Plaintiff returned to Bradford from Franklin on the evening of May 26th, but did not see Evans and did not pay, and did not offer to pay, the ten day note. On Monday, May 28th,

plaintiff saw Evans, explained the reason of the delay, and why he would like still further time, but proposed to raise the money and pay then if Evans so required, to which Evans said, "Let it rest a few days, Baum, and if I need the money I will come and see you." On Saturday, June 2d, plaintiff tendered to Berry the amount of the ten day note with the trifle of accrued interest, and demanded the delivery of the deed. Berry declined to receive the money as payment to Evans, and declined to deliver the deed, for the reason that Evans, sometime between May 28th and June 2d, had so notified him. Thereupon plaintiff left the money with Berry as a formal tender of compliance with the terms of his agreement with Evans, and announced to Berry his purpose to assert his right to the land and his right to the deed.

From a consideration of the evidence the Master finds as a fact that the making of the ten day note by plaintiff and the depositing the same with Berry was no part of the consideration or inducement moving Evans to deposit the deed with Berry. At the most, it was an authority to Evans to receive the note instead of the cash. But he never received it and never agreed to receive it, for any purpose. Under all the evidence the Master regards the deposit by Evans of the deed with Berry as a proposition from Evans to the plaintiff, and revocable by Evans at any time before acceptance of and compliance with the terms of the proposition, and the deposit of the two notes by plaintiff as a proposition from plaintiff to Evans, revocable by plaintiff at any time before Evans accepted the same as payment.

The Master recommended a decree dismissing the bill.

Exceptions were filed to his report, which were overruled by the court, WILLIAMS, P. J., and a decree entered dismissing the plaintiff's bill.

The plaintiff thereupon took this appeal, assigning for error said decree.

*R. Brown (J. H. Osmer* with him), for appellant.—1. There was a contract for the sale of this land between the parties.

The contract was in writing, consisting of the deed executed by Evans and wife and the two notes executed by the plaintiff, and it was not competent for the defendants to prove, or the learned Master or the Court below to find it to be other or different than as expressed in the writings mentioned and admitted by the pleadings.

A promise is a good consideration for a promise : 1 Par. on Contracts, 375, and cases cited. (Note.) Keister *v.* Miller, 25 Pa., 481.

When do mutual propositions become contract obligations

[Baum's Appeal.]

if not when assented to by both parties? This finding challenges the very definition of a contract. A contract is an agreement in which a party undertakes to do or not to do a particular thing: MARSHALL, C. J., in Sturgis v. Crowninshield, 4 Wheat., 197; 2 Blackstone's Com., 446.

It is consummated at the moment the proposition of the one is accepted by the other: Pothier on Obligations, Part 1, c. 1, s. 1, Art. II.; Keep & Hale v. Goodrich, 12 J. R., 397; 2 Kent's Com., 477.

2. Time was not of the essence of this contract.

When time admits of compensation, as it, perhaps, always does where lapse of it arises from the non-payment of money at a particular day, it is never an essential part of an agreement: DeCamp v. Fay, 5 S. & R., 323.

In order to render time essential, it must be expressly stipulated that it shall be so. It is not enough that a time is mentioned during which, or before which, the thing shall be done: Frye on Specific Performance of Contracts, sec. 712, and cases cited.

The time mentioned in a contract of sale for the payment of purchase money is not generally of the essence of the contract: Wells v. Wells, 3 Ired. Ch., 596; Frye on Specific Performance of Contracts, sec. 709; Seaton v. Slade, 7 Ves., Jr., 273; 2 Story Eq., sec. 776; Vorhees v. DeMyer, 2 Barb., N. Y., 37.

The defendant Evans having granted indulgence and extended the time of payment of the note, could not (without regard to the question as to whether time was or was not essential) suddenly and without notice rescind the contract: Hatton v. Johnson, 83 Pa., 219; Irwin v. Bleakley, 67 Pa., 24; Forsyth v. N. A. Oil Co., 53 Pa., 168; Frye on Specific Performance of Contracts, sec. 724; Laird v. Smith, 44 N. Y., 618; Hull v. Noble, 40 Maine, 473; Benedict v. Lynch, 1 John. Ch., 370.

Specific performance will be decreed against a party who, by his acts, has waived the materiality of time: Frye on Specific Performance of Contracts, sec. 745, and cases cited.

3. Equity has jurisdiction.

To compel the delivery of deeds and other instruments in favor of persons legally entitled to them is an old head of equity jurisdiction. It is a most important branch of that jurisdiction, and is exercised in all suitable cases in favor of persons entitled to the custody and possession of deeds and other writings; 2 Story's Equity, sec. 703; Stanton v. Miller, 65 Barb., N. Y., 58.

*David Sterrett* (*Robert H. Rose* with him), for appellees.—

1. There was no evidence of an intention to make an executory contract.

Mr. Evans having made preparation to convey the land, wanted $500 paid in cash and balance secured by judgment, and having been disappointed he agreed (again by parol) to continue his proposition for ten days. Mr. Baum, to attest the sincerity of his intentions, willingly put his promise in the shape of notes. The papers represented the work of preparation to perform their verbal agreement.

2. Again, we maintain as a principle of law, that the delivery of the deed to Berry on a condition for the grantee would not place it beyond the control of the grantor unless the grantor was under a previous binding contract to convey the land to the grantee.

3. Mr. Baum, not having paid the money within the ten days, nor yet at the maturity of the ten day note allowing the days of grace thereon, there was nothing in the evidence of what took place afterwards that would estop Evans in law or equity from countermanding the delivery of the deed. In this respect the appellant is seeking performance in equity alone. He failed to comply with the condition, and he has no case to move the conscience of a chancellor in his favor.

4. But we insist that the court could not decree the delivery of the deed. The plaintiff was clearly an adverse claimant of the legal title with every material fact upon which his title rested in dispute. It was not a bill for discovery as now claimed. The right to the possession of the deed involved the right to have the title and possession of the land. The bill was therefore an ejectment bill.

Mr. Justice TRUNKEY delivered the opinion of the court, May 28th, 1886.

However much the parties may differ as to the terms of the parol contract made prior to May 9th, 1877, on that day, as averred in the answer, Evans executed the deed, and by agreement it was put into the hands of Berry as an escrow; and the notes for the purchase money were also placed in the hands of said Berry, with the understanding that if the note first due should be paid at the expiration of ten days the deed should be delivered to Baum. This averment accords not only with the facts alleged in the bill respecting the final agreement, but with those found by the Master. Among the facts stated in the report is that the deed and notes, "all of which bore date May 9th, 1877, should be left with defendant Berry as the representative of the parties, with the agreement that should the plaintiff pay the $500 within the ten days

Berry should deliver the deed to the plaintiff and the six months' judgment note to Evans."

"The delivery of a deed as an escrow is said to be when one doth make and seal a deed and deliver it unto a stranger, until certain conditions be performed, and then be delivered to him to whom the deed is made to take effect as his deed. And so a man may deliver a deed, and such delivery is good." Generally an escrow takes effect from the second delivery, the title not being perfected in the grantee until the happening of the condition. But the grantor, when the deed has been placed in the hands of a third party as an escrow, cannot after the happening of the act in which delivery is conditional, prevent delivery taking effect by getting possession of the deed: 2 Whar. on Cont., § 679, Regan v. Howe, 121 Mass., 424.

Upon payment of the promissory note in ten days the deed was to be delivered to Baum by Berry. All parties admit that was the sole condition. It was not expressed that time was of the essence of the contract. The land was oil territory, and so situated as to be liable to sudden increase or decrease in value. In the negotiations the vendor insisted on immediate payment of half the purchase money, and delivered the deed on condition that it should be paid in ten days. He promised to extend the time, as will be hereafter noted. The nature of nearly all mining contracts is such as to render time essential, and in several cases it has been held of the essence in contracts for the sale of mines and works: Frye on Spec. Perf. of Cont., § 716. This principle ought to be applied to the stipulation in the condition respecting the deed, subject only to the enlarging of the time for performance by the vendor.

The Master finds that on the 23d of May, Evans agreed to wait for the payment until the evening of the 25th, that he again agreed to wait until the evening of Saturday, May 26th, and that on the following Monday, Baum "saw Evans, explained the reason of the delay, and why he would like still further time, but proposed to raise the money and pay then if Evans so required, to which Evans said, 'Let it rest a few days, Baum, and if I need the money I will come and see you.' On Saturday, June 2d, Baum tendered to Berry the amount of the ten day note with the trifle of accrued interest, and demanded the delivery of the deed. Berry declined to receive the money as payment to Evans, and declined to deliver the deed, for the reason that Evans, sometime between May 28th and June 2d, had so notified him."

No complaint is made by defendants of the findings of fact. Indeed it might well have been found that when the contract was made Evans promised that if the note was not paid at

maturity it would make no difference for a few days, and on the faith of that promise Baum signed the note as it was written. This explains why Evans was so willing to repeatedly extend the time, and why he made the agreement on the 28th of May to see Baum if he should want the money.

It appears in the testimony that soon after the agreement made on the 28th, Coddington, who claimed some interest in the land, induced Evans to attempt to annul the contract, and to that end the notice was given to Berry not to deliver the deed. But Evans gave no notice to Baum that he wanted the money, or that he considered default had been made in performance of the condition. Baum could rely on the promise of Evans to give him notice for a reasonable time; not receiving the notice, he promptly tendered the money and demanded the deed. Conceding that Evans had the right to require performance of the condition within the ten days, and within any time thereafter, he did not; on the contrary, from the making of the contract until after he gave the notice to Berry, in every interview with Baum he agreed to postponement of the payment. His conduct was calculated to throw Baum off his guard, to induce him to believe that time was not of the essence of the condition, and under the circumstances the condition was well performed within five days after the last postponement.

We are unable to agree with some of the Master's inferences from the actual facts. It is admitted in the answer that the deed was delivered as an escrow. The evidence shows this admission was correct, not a mistake; at the same time the notes were put into Berry's hands. Baum was obligated to pay the notes. Evans had no right to withdraw the deed, unless Baum failed to perform the condition. It was error to rule that the parties had done no more than to make propositions to each other, which either was at liberty to withdraw, even before the expiration of ten days.

Nor was the promise made by Evans on the 28th of May, void. It must be viewed in the light of what had preceded respecting the giving of time. Both Baum and Evans acted as if Baum had the right to pay the money on that day; he did not, on the faith of Evans's promise. True, there had been no express promise to extend the time beyond the evening of the 26th, but it is obvious the parties understood the right to perform the condition existed on the 28th, a rational inference from their previous conduct.

Nor is the proceeding premature. It is a familiar principle that the remedial justice of a court of equity is often most beneficially applied in favor of persons entitled to the custody and possession of deeds. "And a case where a deed has been

delivered in escrow upon a condition which has been fulfilled, would seem to be one which especially justifies and calls for the exercise of this jurisdiction, since the withholding of the deed interferes with, and probably prevents, the vesting of the legal title:" Stanton v. Miller, 65 Barb., 58. This principle ought to apply where the grantee has done all in his power to fulfil the condition, and the fulfilling was prevented by the sole act of the grantor.

This is not the case where the plaintiff claims to recover possession of land under an adverse title distinct from the defendant's grant. The plaintiff claims the land by purchase, and that the deed was delivered in escrow by the vendor. His bill is to compel the handing over of that deed. Unless his right to the deed is clear, he has no case at law or in equity. If clear, it is peculiarly within the province of a court of equity to give him the specific relief to which he is entitled.

1. And now it is considered and decreed that the decree of the court below be and is reversed.

2. That the defendants, R. W. Evans and Geo. A. Berry, deliver unto the plaintiff, B. W. Baum, the deed described in the bill, within ten days after notice of this decree.

3. That R. W. Evans, appellee, pay all costs, including costs of this appeal.

4. That the record be remitted for enforcement of this decree.