376 Pa. 312 (1954)
Paul
v.
Kennedy, Appellant.
Supreme Court of Pennsylvania.
Argued November 10, 1953.
January 11, 1954.
*313 Before STERN, C.J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.
William Vincent Mullin, for appellant.
Henry J. Morgan, with him Raymond A. Speiser and Speiser, Satinsky, Gilliland & Packel, for appellees.
OPINION BY MR. JUSTICE BELL, January 11, 1954:
This is a Bill in Equity by a buyer for specific performance of a certain agreement of sale between him and the seller, in which the seller agreed to sell and to cause to be transferred to the buyer a Pennsylvania Public Utility Commission license as a common carrier of property, together with the equipment, trucks, accounts and good-will of the business conducted under the license, for a purchase price of $7,500.00.
Herbert Brenner, a business broker, was engaged by the seller to obtain a purchaser for his business, receive the purchase price and conclude the sale. Pursuant to his agency, Brenner inserted an advertisement in the newspapers. The advertisement was seen by the *314 buyer who entered into negotiations with Brenner. The Chancellor found as a fact that as a result of these negotiations, the seller and the buyer entered into a final written agreement of sale which was drafted and prepared by Brenner and executed by seller even before it was shown to buyer. Pursuant to the terms of the agreement and in full performance thereof by the buyer, the entire purchase price was paid by the buyer to Brenner in escrow for the seller. Brenner thereafter absconded with the money prior to performance of the agreement by the seller.
The narrow question presented on this appeal is: Upon whom shall fall the loss occasioned by Brenner's embezzlement? The lower Court decreed specific performance and the seller now appeals from that decree.
The pertinent provisions of the sales agreement are: "3. The said sum or sums of Seventy-five hundred dollars shall be placed with Herbert Brenner, at the signing of this agreement to be held by him in escrow until the approval by the Commonwealth of Pennsylvania of the transfer of the aforementioned P.U.C. License. Upon approval of the Commonwealth of Pennsylvania the said Herbert Brenner shall pay over to the said Thomas J. Kennedy [the seller] the monies held in escrow by him. 4. That on due execution of these agreements by the parties herein the said Thomas J. Kennedy [the seller] will file with the Commonwealth of Pennsylvania the necessary application for the transfer of the said P.U.C. License to the buyer. It is understood and agreed that the said Thomas J. Kennedy [the seller] shall defray and pay all costs of the said transfer.[*] . . . 10. The seller agrees to pay Herbert Brenner . . . a commission in the sum of $500.00 of which said sum the said Herbert Brenner shall defray *315 for the seller the expenses of the transfer of the aforementioned P.U.C. License by the buyers."
It is unnecessary to define or to point out the difference between an escrow and an escrow agreement. See Angelcyk v. Angelcyk, 367 Pa. 381, 384, 385, 80 A. 2d 753. The depositary (of an escrow or) under an escrow agreement is generally considered to be an agent (or trustee) for both parties  a special agency whose authority must be strictly construed, and who is bound by the terms of the escrow agreement: Kreuer v. Union National Bank, 276 Pa. 201, 205, 206, 119 A. 921; Kellogg v. Curry, 226 P. 2d 381 (Cal. 1951); People v. Hess, 234 P. 2d 65 (Cal. 1951); 21 C.J., page 878; 11 Am. & English Encyclopaedia Law, 2d Ed., p. 345; 19 Am. Jur., sec. 13, p. 430.
If Brenner were acting purely as an escrow agent for both parties, then under general escrow law the loss would be on the buyer. Under the usual escrow agreement, the depositor loses control of the instrument or money placed in escrow, although he still retains legal title thereto until performance of the condition or the happening of the specific event upon which delivery is to be made by the depositary. Cf. Baum's Appeal, 113 Pa. 58; Lipman, Trustee, v. Noblit, 194 Pa. 416, 45 A. 377; 30 C.J.S., sec. 9, pages 1206, 1207; 19 Am. Jur. sec. 11, p. 426.
Was this an ordinary escrow agreement, or considering all the attendant facts and circumstances was Brenner in fact and in law the agent of the seller at the time of the embezzlement?
It is undisputed that Brenner was first employed by the seller to obtain a buyer for his business. As a result of the advertisement inserted in a newspaper by seller's agent, Brenner, the buyer delivered to Brenner, as agent for the seller, a check made payable to Brenner for $500. down money along with a verbal *316 offer to purchase the seller's license and business. Thereafter, Brenner prepared a written agreement which was executed by the seller prior to its delivery to or execution by the buyer. In accordance with this written agreement the buyer gave Brenner a check in the amount of $7,000., payable to his order representing the balance of the purchase price. Under the agreement above quoted, Brenner was to hold the money in escrow until the seller obtained at his expense approval by the Commonwealth of Pennsylvania of the transfer of seller's license; and the seller agreed to pay Brenner a commission of $500., of which sum Brenner was to "defray for the seller" the expenses of the transfer of the license. It is, we believe, a fair inference that Brenner was to pay for the seller the expenses of the transfer of the license out of the down money of $500. deposited with him.
The buyer performed and fulfilled all the terms and conditions required of him by the agreement, prior to Brenner's embezzlement; the seller failed to perform prior to the embezzlement all the conditions required to be performed by him. We believe this agreement was sufficiently different from the ordinary escrow agreement to make it both equitable and legal to impose this unfortunate loss upon the seller whose agent Brenner primarily was throughout the entire transaction.
Lipman, Trustee, v. Noblit, 194 Pa., supra, is an analogous case which on its facts is even stronger for the seller than the present case. In that case the buyer appeared at the place of settlement ready and able to pay the purchase price and receive the deed. There was an unsatisfied mortgage upon the premises which was the duty of the seller to have satisfied, before he could require the payment of the entire purchase price. The buyer paid the seller all of the purchase money except the amount due on the unsatisfied mortgage, *317 namely, $1,010. The parties agreed that the sum of $1,010. should be held by the buyer's attorney, to be paid by him to the seller as soon as the mortgage was satisfied. The attorney signed the following receipt: "Received of . . . Lipman [seller] the sum of one thousand and ten dollars to be paid to him upon the entry of satisfaction of the paid mortgage of . . . Lipman to . . . Lehman . . ." The attorney embezzled the money and the seller sued the buyer for $1,010. The Court below gave binding instructions for the buyer, which this Court sustained because it held that the buyer's attorney was custodian for the seller and that the seller had treated the attorney as his agent for the custody of the money.
Furthermore, it is a just and well established maxim that "`where one of two innocent persons must suffer from the wrongful act of a third, the loss should be borne by him who put the wrongdoer in a position of trust and confidence and thus enabled him to perpetrate the wrong'": Franklin Fire Ins. Co. v. Bradford, 201 Pa. 32, 38, 50 A. 286.
We therefore hold upon equity, reason and authority that in this case the seller must bear the loss and that the buyer is entitled to specific performance of the agreement of sale, upon the terms and conditions set forth in the decree of the Court below.
The decree of the Court below is affirmed; each party to pay its and his respective costs.
NOTES
[*] Italics throughout, ours.