**Catherine Baker KNOLL, Pennsylvania State Treasurer, and Member of the State Workers' Insurance Board, Petitioner,**

**v.**

**Johnny J. BUTLER, Secretary of Labor and Industry and Chairman of the State Workers' Insurance Board, and Linda Kaiser, Insurance Commissioner and Member of the State Workers' Insurance Board, MSB Holding Corporation, a Pennsylvania Corporation, KSB Holding Corporation, a Pennsylvania Corporation, and Royal Bank of Pennsylvania, a Pennsylvania chartered banking institution, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1996.

Decided May 13, 1996.

---

Michael Jon Daley, for Petitioner.

Brian P. Downey and J. Matthew Wolfe, Chief Counsel, for Respondents, Johnny Butler and Linda Kaiser.

Before COLINS, President Judge, and KELLEY, J., and MIRARCHI, Senior Judge.

COLINS, President Judge.

Catherine Baker Knoll (Treasurer), in her capacities as Treasurer of the Commonwealth of Pennsylvania and as a member of the State Workers' Insurance Board (SWIB), brings this equity action in our original jurisdiction against Respondents Johnny Butler (Butler), in his capacities as Secretary of Labor and Industry and Chairman of SWIB, Linda Kaiser (Kaiser), in her capacities as Insurance Commissioner[1] and a member of SWIB, MSB Holding Corporation (MSBHC), KSB Holding Corporation (KSBHC), and Royal Bank of Pennsylvania (Royal), seeking a declaratory judgment that monies deposited in an escrow account by Royal should be paid to Treasurer and a mandatory injunction requiring Respondents to disburse certain escrowed funds to Treasurer. Respondents filed preliminary objections, in the nature of a demurrer, for failure to state a cause of action upon which relief

---

1. The Insurance Commissioner is the head of the Insurance Department. Section 206 of the Administrative Code of 1929, P.L. 177, *as amended,* 71 P.S. § 66 (Administrative Code).

can be granted. For the reasons set forth below, the demurrer is sustained.

On July 31, 1995, Treasurer commenced this action by filing a petition for review against Butler and Kaiser, requesting a declaratory judgment concerning the validity of a resolution passed by SWIB at its July 21, 1995 meeting, which authorized the sale of two corporations wholly owned by SWIB through its holding companies, and the deposit thereafter by the purchaser of the monies from the sale into escrow accounts not under Treasurer's control. Respondents Butler and Kaiser filed preliminary objections, requesting summary relief on the grounds of mootness. Treasurer amended her petition for review by (1) adding a count in equity seeking an injunction requiring that the proceeds in escrow be disbursed to Treasurer; and (2) naming MSBHC, KSBHC, and Royal as additional Respondents.

All Respondents filed preliminary objections to Treasurer's amended petition for review. These preliminary objections, *in toto,* raise three issues before this Court: (1) whether the deposit of the monies into escrow accounts from the sale of Knoblaugh State Bank (KSB) to Royal violates Section 301 of The Fiscal Code (Code)[2] or Section 4 of the Workers' Compensation Act (Act)[3] by inhibiting Treasurer's role as custodian of the State Workmen's Insurance Fund (SWIF) monies; (2) whether Treasurer has standing in this matter to institute litigation on behalf of the Commonwealth or SWIB; and (3) whether preliminary objections to certain averments in Treasurer's amended petition for review should be stricken as impertinent matter.

The transactions in question arise from when the Secretary of Banking of the Commonwealth of Pennsylvania (Secretary) took possession of two private banks by seizure: the Marian Bank and Tobias Knoblaugh Private Bank. The Secretary then organized and chartered Marian State Bank (MSB) and Knoblaugh State Bank (KSB). SWIB purchased all of the shares of common stock issued and sold by the two banks.

SWIB consists of Treasurer, Butler, and Kaiser.[4] In 1992, SWIB, as sole shareholder, formed KSBHC and MSBHC and, with SWIF monies, purchased all of the outstanding stock of KSB and MSB. On September 14, 1994, SWIB, acting through KSBHC and MSBHC, authorized the merger of MSB into KSB, leaving KSB as the sole entity, wholly-owned by SWIB, acting through KSBHC and MSBHC, respectively.

On January 10, 1995, SWIB resolved to sell all shares of KSB to Royal for $8,543,-850.00, payable to KSBHC and MSBHC **"upon completion of the merger."** On January 13, 1995, the boards of KSBHC and MSBHC met in separate meetings, passed resolutions and approved the merger of KSB into Royal, the surviving corporation. In a meeting on July 21, 1995, SWIB, absent Treasurer,[5] passed a resolution which amend-

---

2. Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. § 301.

3. Act of June 2, 1915, P.L. 762, *as amended,* 77 P.S. § 223.

4. SWIB is a departmental administrative board in the Department of Labor and Industry. Section 202 of the Administrative Code, 71 P.S. § 62. SWIB consists of the Secretary of Labor and Industry, the Insurance Commissioner and the Treasurer. Section 2 of the Act, 77 P.S. § 211. The officers and employees of SWIB are officers and employees of the Commonwealth. Section 1 of the Act, 77 P.S. § 381. The State Workmen's Insurance Fund (SWIF) is administered by SWIB and consists of certain sums paid by employers for the purpose of insuring such employers against liability and assuring employees of the payment of benefits awarded under certain acts. Section 3 of the Act, 77 P.S. § 221. The State Treasurer is the custodian of the fund and all disbursements therefrom are paid by Treasurer by cheque, upon requisition by the Secretary of Labor and Industry. Section 4 of the Act, 77 P.S. § 223. SWIB has the power to invest the surplus of SWIF and must place all securities or other evidence of indebtedness to SWIF in the hands of Treasurer as custodian thereof. Section 12 of the Act, 77 P.S. § 282.

5. Treasurer states she did not attend this meeting because she believed it was not properly advertised as required by the Sunshine Act, Act of July 3, 1986, P.L. 388, *as amended,* 65 P.S. §§ 271–286. However, in her Amended Petition, Treasurer "removed all references to the Sunshine Act to demonstrate that a cause of action under the Act was not being raised." (Amended Petition at 32, n. 14). Treasurer further noted that her "allegation about the manner in which the July 21, 1995 Board meeting was advertised was set forth in the Amended Petition not to aver a

ed the terms of the sale of KSB to Royal.[6] The amendments included a reduction in the sale price, and the establishment of an escrow agreement (the Agreement), dated July 21, 1995, designating two private law firms as escrow agents.

One of the stated purposes of the Agreement is to induce the consummation of the merger by providing Royal with comfort, i.e., collateral, regarding certain threatened or pending litigation against KSB, MSB, and their private bank predecessors, by providing the entire consideration for the merger to the escrow agents to use such funds for payment of various possible expenses related to both threatened and pending claims against KSB and MSB. The Agreement requires the escrow agents to release escrow funds to KSBHC and MSBHC upon resolution of certain litigation, with all remaining escrow funds being released no later than December 31, 1998, less any amount for litigation pending as of that date. The Agreement further provided that the escrow agents would deposit $4,250,000 (almost one-half of the purchase price) in Royal and the balance in other depository banks. Mellon Bank was later selected by the escrow agents as the other depository. The depository banks, including Royal, were to comply with all of the legal requirements of a SWIF depository and have federal deposit insurance or other legal collateral. All investments were made by the escrow agents subject to direction by KSBHC and MSBHC, but investments were limited to deposit products offered by Royal. KSBHC and MSBHC

were entitled to the investment income or profits realized by the escrow fund in excess of the principal amount upon written request. Royal agreed as a condition of being one of the depository banks, however, to follow the directions of the escrow agents regarding investments and waived any lien, security interest, possessory interest, right of set off and any right to enjoin, stop or interfere with any payment it was directed to make by the escrow agents.

Treasurer maintains that Respondents' actions, in depositing the monies from the sale of KSB to Royal into escrow accounts not under her control, violate Section 301 of the Code and Section 4 of the Act. The preliminary objections assert that neither SWIB nor the holding corporations have, or ever had, possession or custody of the monies from this sale, and that, as a matter of law, legal title to the escrowed funds still remains with Royal, the depositor/buyer. In order to grant preliminary objections in the nature of a demurrer, this Court must accept as true all well-pled allegations and material facts averred in the petition, as well as all inferences reasonably deducible therefrom. *Chester Upland School District v. Yesavage,* 653 A.2d 1319 (Pa.Cmwlth.1994).[7]

▪ The basic issue is whether the escrowed monies are funds in the possession of SWIB, and/or whether SWIB has legal title over them for purposes of Section 301 of the Code and Section 4 of the Act.

"Escrow" is defined as

---

violation of the Sunshine Act but to show that the Treasurer acted in good faith and is therefore entitled to pursue equitable remedies." (Amended Petition at 33).

6. Treasurer attached "a true and correct copy of the Board's Resolution with the attached draft of the Escrow Agreement" and incorporated them by reference into the Amended Petition as Exhibit B. Although no certification by the corporate chairman or secretary of SWIB was attached to that resolution, there was no objection by any party, so the resolution is deemed valid for purposes of deciding the preliminary objections because Treasurer has certified them in her verification to the Amended Petition.

7. Respondents Butler and Kaiser, in support of the preliminary objections, recite an allegation in their brief at 4, note 2, that Treasurer voted to

approve the acquisition of the two private banks in 1992, citing a SWIB Resolution attached as Appendix D to Respondents' brief. Respondents, when filing preliminary objections in the nature of a demurrer, are limited to facts in the petition that are well pled and material and may not attempt to buttress their argument in favor of the demurrer by alleging facts *not* in the petition or reasonably deducible therefrom. Respondents' allegation in their brief is not well pled. Any allegation of fact contained only in an attorney's brief which is not set forth in a pleading does not even rise to the level of a speaking demurrer (which it would be here if it was contained in the preliminary objections), and will not be considered for any purpose. *Martin v. Department of Transportation,* 124 Pa.Cmwlth. 625, 556 A.2d 969 (1989).

[a] legal document (such as a deed), money, stock or other property delivered by the grantor, promisor or obligator *into the hands of a third person, to be held by the latter until the happening of a contingency or performance of a condition, and then by him delivered* to the grantee, promisee or obligee.

Black's Law Dictionary 545 (6th ed. 1990) (emphasis added). The condition or contingency upon which the escrow shall be delivered must be expressed by an agreement between the parties termed an escrow agreement. *Angelcyk v. Angelcyk,* 367 Pa. 381, 80 A.2d 753 (1951). An ordinary escrow agreement creates a fiduciary relationship between the agent and the transferor. The depositor is usually the buyer who, nevertheless, retains title to the escrowed money until the performance of certain conditions or happenings of specific events (the escrow conditions). Once the escrow conditions occur, delivery of the money in escrow is then made by the escrow agent or depositary to the seller, in this case by the direction of the escrow agents to Royal and Mellon Banks to pay the funds in escrow to KSBHC/MSBHC. If the conditions of escrow do not occur, the escrow depositary would normally return the escrowed money to the depositor/buyer unless the facts of the particular escrow agreement were extraordinary. *Paul v. Kennedy,* 376 Pa. 312, 102 A.2d 158 (1954).

The escrow agent or depositary is generally considered the agent of both parties under a special agency agreement, where authority of the agent is strictly construed and whose responsibilities are set forth in the escrow agreement. *Id.* Under the present Agreement, the monies placed in escrow will be released by the depository banks upon direction of the escrow agents to KSBHC and MSBHC when all claims against the predecessors of KSBHC and MSBHC, i.e., KSB and MSB, are resolved, or on December 31, 1998, whichever first occurs.

Treasurer cites to *Paul* and argues that the present Agreement is sufficiently different from an ordinary escrow agreement, so that no escrow relationship can be said to exist in this case if the court looks beyond the label of "escrow," and focuses instead on the surrounding facts and circumstances of the agreement. *Paul* however, is distinguishable.

In *Paul,* it was not held that an escrow agreement did not exist merely because it was not an ordinary escrow. In fact, the court examined the terms of that escrow agreement in order to determine something which was not in the agreement, i.e., who should bear the loss. The court recognized the existence of the contractual relationship established by the escrow agreement when it concluded that "this agreement was sufficiently different from the ordinary escrow agreement to make it both equitable and legal to impose this unfortunate loss upon the seller whose agent [the escrow agent] primarily was throughout the transaction." *Id.* at 316, 102 A.2d at 160.

In *Paul,* a business broker was contacted by the seller, Kennedy. The seller instructed the broker to find a buyer for seller's business, receive the purchase price, and conclude the sale. A buyer, Paul, was found, and Kennedy's broker entered into negotiations with the buyer. Thereafter, Paul, the buyer, paid the entire purchase price to the broker (the escrow agent/depositary) to hold in escrow for the seller until the transfer of the liquor license was approved. The broker absconded with the escrow monies before seller executed its performance of the agreement by getting approval of the transfer of the license. The Supreme Court distinguished the facts of the *Paul* case from the ordinary escrow agreement because the broker, who was the escrow agent, was not a true agent of *both* parties, but was primarily seller's agent throughout the entire transaction. The court placed the loss on the seller, and held that the buyer was entitled to specific performance of the agreement of sale, i.e., transfer by the seller of the business with an approved liquor license.

■ Here, two private law firms are acting jointly as escrow agents to both Royal and KSB. In accordance with the Agreement, they are bound to ensure that the monies are properly utilized in accordance with the Agreement. Although one of the agreed upon escrow conditions requires that a portion of the escrowed funds be deposited

by the escrow agents into Royal and invested in its deposit products, Royal is acting only in the capacity of a depositary for that purpose, is only one of the authorized depositories, and is completely subject to the direction of the escrow agents, who are fiduciaries acting as agents of KSBHC/MSBHC as well as Royal.

Further, the Agreement does provide control conditions on Royal above and beyond those placed on the ordinary depositary, so as to cause, or have caused, the escrow funds to be invested at the direction of KSBHC/MSBHC. This requires that all of the investments of escrowed monies be of a type which KSBHC/MSBHC or SWIF is authorized by law to make: to comply with SWIF depository requirements, including federal insurance or full collaterization; to follow the directions of the escrow agents regarding investments; and to waive certain rights, often exercised by depositaries, such as waiving any lien, security interest, possessory interest, right of set off and any right to enjoin, stop or interfere with any payment it is directed to make by the escrow agents. Thus, even looking beyond the label "escrow" and focusing on the facts and circumstances surrounding this Agreement, there is nothing in this Agreement which causes it to be treated as another type of escrow agreement, with conditions negotiated by the parties which are peculiar to the individual underlying commercial transaction.

Further, neither the Code nor the Act requires Respondents to utilize Treasurer as an escrow agent during escrow transactions.[8] Section 4 of the Act merely provides that Treasurer is the "custodian" of SWIF monies.[9] Treasurer maintains that Section 301

of the Code, requires the Treasury Department to deposit all monies *received by it* into depositories approved by the Board of Finance and Revenue and that the Agreement violates Section 301.[10] The distinction here is that the proceeds of the sale were never received by Treasury, but were deposited by Royal directly into the escrow accounts established in the names of the escrow agents in the depository banks who are subject to the express control of the depositor escrow agents who then had control of the funds. The funds in escrow were never *funds received* by either the state, SWIF, KSB, MSB, KSBHC or MSBHC and will not become funds received by any of them until the "escrow is broken" after completion of the escrow conditions.

Treasurer also urges this court to pierce the corporate veil of MSBHC and KSBHC in order to require the sale proceeds to be deposited with Treasurer.[11] SWIF funds were used to purchase KSB and MSB and to incorporate KSBHC and MSBHC. KSB, MSB, KSBHC and MSBHC are, however, independent, state-owned corporate entities which are owned by SWIB as the sole shareholder but are operated by separate boards of directors. Although the Secretary of Labor and Industry and the Insurance Commissioner are members of each of the boards, Treasurer is a member of SWIB but not of the board's KSB, MSB, KSBHC or MSBHC, which SWIB owns entirely. A third state officer sits on the boards of the corporate banks named herein other than SWIB. (Petition Exhibits A, B, and C.)

The Commonwealth has gone to great lengths to establish each corporation as a separate entity; third parties, such as Roy-

---

8. As there is no requirement in either the Code or the Act which mandates that Commonwealth parties, such as SWIB, utilize Treasurer as the escrow agent when establishing escrow accounts, any procedural changes must evolve through the legislative process, rather than by judicial remedy.

9. The pertinent portion of Section 4 of the Act states that the "State Treasurer shall be the custodian of the [State Workmen's Insurance] fund; and all disbursements therefrom shall be paid by [her] by cheque, upon requisition by the Secretary of Labor and Industry."

10. Section 301 states, in pertinent part, that the "Treasury Department shall deposit all moneys of the Commonwealth received by it, including moneys not belonging to the Commonwealth but of which the Treasury Department or the State Treasurer is custodian, in State depositories approved by the Board of Finance and Revenue."

11. We note that Treasurer, in her Amended Petition at page 21, footnote 10, states she does not seek to pierce the corporate veil for all purposes, but only for the purpose of having the sale proceeds deposited with her.

al, may be expected to rely upon proper corporate actions taken by them. When the escrowed funds are released, they will be released to KSBHC and MSBHC, as separate corporate entities. The general rule in Pennsylvania is that a corporation is regarded as an independent entity even if the corporate stock is owned entirely by one person. *Kaites v. Department of Environmental Resources,* 108 Pa.Cmwlth. 267, 529 A.2d 1148 (1987). Factors which may, at times, justify disregarding the corporate form include substantial intermingling of corporate and personal affairs, undercapitalization, failure to adhere to corporate formalities, and using a corporate form to perpetrate a fraud. *Id.* None of these factors are present in this case so the corporate veil will not be pierced, even for the limited purpose requested.

Additionally, the property of a wholly owned corporation belongs to the corporation, not to the owner. *Moss v. Elan Memorial Park Corp.,* 400 Pa. Superior Ct. 555, 583 A.2d 1254 (1990). KSB and MSB are corporate entities separate from SWIB. Therefore, even if KSBHC and MSBHC receive funds from the escrow accounts in the future, those funds will not be monies received by the Commonwealth and will not be subject to Treasurer's control unless the respective boards of directors pass proper resolutions to approve a distribution to SWIB. Treasurer has, therefore, failed to state a legally sufficient claim because the funds in question have never been received by a state entity in which Treasurer is custodian of its funds.

When SWIB met in January to approve the merger, Royal was entitled to later rely on the proper resolutions of SWIF and the other banks. Similarly, when SWIB met in July and, by a 2–to–0 vote, approved changes in the merger agreement that were obviously negotiated after the January meeting, Royal could rely on SWIB's approval of the amended terms since no challenge to that meeting was timely filed. SWIB voted to sell some assets—KSB and MSB. No SWIF money was used to buy anything in this transaction. Royal's money was used to buy KSB and MSB—not SWIF's. Royal's money is in escrow—not SWIF's.[12]

Because KSBHC and MSBHC had proper authority from its January and July meetings to prepare and execute documents, including the escrow Agreement, to complete the transaction, Royal's purchase money was never received by SWIB or any Commonwealth entity but went directly into the hands of third parties, the escrow agents, until the escrow conditions are performed.

Until the monies in question are released from escrow, the Commonwealth has neither legal title nor control of these monies, as it has not yet *received* these monies. Therefore, until such time as the Commonwealth receives these monies, i.e., when the escrow conditions have been performed and the money is released to KSBHC/MSBHC, Treasurer has no duties as custodian of these monies.

Treasurer's amended petition is premised on the sale proceeds being Commonwealth monies. In fact, the sale proceeds are in legally binding escrow funds deposited in accordance with a valid contract, the title to which funds remains in the depositor, Royal, until the escrow conditions are fulfilled, at which time it is the fiduciary duty of the escrow agents to deliver them to KSBHC/MSBHC. Treasurer avers that the escrowed funds are SWIF monies and, therefore, subject to her control. It is clear from Treasurer's factual allegations, however, that, as a matter of law, the funds at issue are under the exclusive control of the escrow agents while Royal retains legal title thereto and acts as the depository of the escrow agents.

We do, therefore, hold that the escrow Agreement in this matter is a valid escrow agreement, that KSBHC and MSBHC adhered to proper corporate procedure and acted as valid corporations, the legal title to the monies in the escrow Agreement is still held

---

12. Although the underlying purchase agreement is *not* in the record, we further note, without holding, that since Royal owns the legal title to the money in escrow, if the Escrow Agreement was held to be void, as urged by Treasurer, it is likely that the purchase money in escrow would be awarded to Royal as the legal title holder, because escrow conditions would never have been fulfilled.

by Royal and the escrowed funds in question are not presently SWIF funds. As such, Treasurer has no present duty or entitlement to these monies.

Accepting all of the well-pleaded allegations contained in Treasurer's petition as true, Treasurer, nevertheless, has failed to state a cause of action for which relief can be granted. Accordingly, Respondents' preliminary objections in the nature of a demurrer are sustained; Treasurer's amended petition for review seeking a declaratory judgment and a mandatory injunction is dismissed.[13]

FLAHERTY, J., recused himself after attending the oral argument and the case was submitted to KELLEY, J., on briefs.

### ORDER

AND NOW, this 13th day of May, 1996, Respondents' preliminary objections are sustained. Treasurer's Amended Petition for Review is dismissed.

---

**13.** As preliminary objections in the nature of a demurrer are sustained, we need not address the additional issues in Respondents' preliminary objections.