## MICHAEL A. KALLAS *v.* CHARLES HARNEN
## (AC 16720)

Lavery, Landau and Spallone, Js.

Argued January 16—officially released March 31, 1998

*Donald A. Mitchell,* for the appellant (defendant).

*Mark W. Korotash,* for the appellee (plaintiff).

*Opinion*

LANDAU, J. The defendant, Charles Harnen, appeals from the judgment of the trial court in favor of the plaintiff, Michael A. Kallas, in accordance with the report of an attorney trial referee.[1] On appeal to this court, the defendant claims that the trial court improperly accepted the referee's report,[2] which concluded that the defendant is liable to the plaintiff for returning the plaintiff's earnest money deposit on a condominium unit. We affirm the judgment of the trial court.

There is little dispute as to the basic facts. In March, 1986, the defendant entered into a contract to sell certain real property to the plaintiff through the plaintiff's trustee, Cordalie Benoit. The real property in question

[1] General Statutes (Rev. to 1989) § 52-434 provides in pertinent part: "State referees. (a) Appointment of retired judges and *members of the bar.* Cases referred. . . . The superior court may refer any civil, nonjury case or with the written consent of the parties or their attorneys, any civil jury case pending before the court in which the issues have been closed to such a state referee who shall have and exercise the powers of the superior court in respect to trial, judgment and appeal in the case. . . . The referee shall hear any such case so referred and report the facts to the court by which the case was referred. . . . (4) In addition to the state referees who are appointed pursuant to subdivision (1), (2) or (3) of this section, the chief justice may appoint, *from qualified members of the bar of the state,* who are electors and residents of this state, as many state referees as he may from time to time deem advisable or necessary. . . ." (Emphasis added.)

[2] Although the referee sent a corrected report to the trial court, we refer to the document only as the report in this opinion.

was a condominium unit to be constructed in Danbury. The defendant's attorney, Roderick MacKenzie, drafted the contract, which provided, inter alia, that a deposit of $7450 was to "be held in escrow by the [defendant's] attorney" and that, if the closing did not take place within one year of the scheduled date, i.e., June 15, 1987, "all moneys paid shall be returned to [plaintiff]." The contract assumed completion of the condominium unit, the acquisition of title to the premises by the defendant,[3] and subsequent conveyance of title to the plaintiff. The defendant signed the contract as did the plaintiff's trustee. Because the defendant never obtained title to the condominium unit, the conveyance of title to the plaintiff did not take place.

On August 29, 1990, the plaintiff demanded that the defendant return his deposit in accordance with the terms of the contract. The defendant failed to do so. Therefore, the plaintiff commenced a one count breach of contract action against the defendant for failing to return his deposit. The matter was heard by the referee, who concluded that the plaintiff proved tender of the deposit to MacKenzie in accordance with the contract, that he was entitled to the return of his $7450 deposit with interest and that the defendant is liable to the plaintiff. The trial court approved the report and rendered judgment. This appeal followed.

The defendant does not dispute that the plaintiff is entitled to the return of his deposit. In the trial court and at oral argument, however, the defendant claimed that he personally never received the deposit paid by the plaintiff because it was held in escrow by MacKenzie and, therefore, he is not liable to the plaintiff for breach of contract for failing to return the deposit. We disagree.

---

[3] The defendant was a straw party in the transfer of title.

As a preliminary matter, we must examine the procedures that govern matters heard by an attorney trial referee. See Practice Book § 428, now Practice Book (1998 Rev.) § 19-1, et seq. An attorney trial referee "is obliged to report to the court 'the facts found and the conclusions drawn therefrom,' but the report may be supplemented with a 'memorandum of decision including such matters as [the attorney referee] may deem helpful in the decision of the case. . . .' Practice Book § 434." *Seal Audio, Inc.* v. *Bozak, Inc.*, 199 Conn. 496, 503, 508 A.2d 415 (1986). The parties may seek additions and corrections to the facts contained in this report by filing a motion to correct with the attorney trial referee pursuant to Practice Book § 438, now Practice Book (1998 Rev.) § 19-12. After the attorney trial referee responds to any motions to correct, the parties may file with the trial court exceptions to findings of fact pursuant to Practice Book § 439, now Practice Book (1998 Rev.) § 19-13, or objections to factual conclusions or rulings pursuant to Practice Book §440, now Practice Book (1998 Rev.) § 19-14. See *Tarka* v. *Filipovic*, 45 Conn. App. 46, 51, 694 A.2d 824, cert. denied 242 Conn. 903, 697 A.2d 363 (1997).

"Our standard of review on a challenge to the trial court's factual findings requires the [defendant] to establish that the factual findings were clearly erroneous. Practice Book § 4061; *Cashman* v. *Calvo*, 196 Conn. 509, 516, 493 A.2d 891 (1985). A finding is 'clearly erroneous,' when, even though the finding is supported by some evidence, the reviewing court, on the basis of all the evidence, is left with the definite and firm conviction that a mistake has been committed by the fact finder. *Beizer* v. *Goepfert*, 28 Conn. App. 693, 704, 613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992), cert. denied, 507 U.S. 973, 113 S. Ct. 1416, 122 L. Ed. 2d 786 (1993)." *Mastronardi* v. *Infante*, 34 Conn. App.

584, 590–91, 642 A.2d 84, cert. denied, 231 Conn. 907, 648 A.2d 154 (1994).

"While the reports of [attorney trial referees] in such cases are essentially of an advisory nature, it has not been the practice to disturb their findings when they are properly based upon evidence, in the absence of errors of law, and the parties have no right to demand that the court shall redetermine the fact thus found." (Internal quotation marks omitted.) *Seal Audio, Inc.* v. *Bozak, Inc.*, supra, 199 Conn. 508.

"Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the [attorney trial] referee. See *Bowman* v. *1477 Central Avenue Apartments, Inc.*, 203 Conn. 246, 256, 524 A.2d 610 (1987)." *Bernard* v. *Gershman*, 18 Conn. App. 652, 656, 559 A.2d 1171 (1989). "Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corp.*, 203 Conn. 123, 131, 523 A.2d 1266 (1987).

The defendant argues on appeal that his attorney acted as the escrow agent of both parties and suggests that we apply the general rule that a loss occasioned by the wrong of an escrow holder must, as between the parties to the escrow transaction, be borne by the one who owned the property or money at the time of the loss; i.e., if the escrow agent embezzles money before the time when the vendor is entitled to it, the loss falls on the vendee; if the escrow agent embezzles the money after the vendor is entitled to it, the loss falls on the vendor. See 28 Am. Jur. 2d, Escrow § 20 (1966); 30A C.J.S., Escrows § 9 (1965). This rule has no application to the facts of the case now before us.

The following additional facts are necessary for our analysis. The defendant admitted and the attorney trial referee found that MacKenzie was acting as the defendant's attorney and agent with respect to the sale of the condominium unit. The attorney trial referee also found that MacKenzie had drafted the subject contract of sale for real property and concluded that "[t]he deposit funds were held by the defendant's attorney acting as an escrow agent for the benefit of both the plaintiff and the defendant. See paragraphs 4.a, 5 and 11 of the contract for sale." The pertinent language of the referenced paragraphs of the contract states:

"4.a. The sum of Seven Thousand Four Hundred Fifty Dollars ($7,450.00) paid toward the purchase price shall be held in escrow by the [defendant's] attorney [u]ntil [the defendant] obtains title to said premises.

"5. The conveyance of the premises and payment of the purchase price shall take place at the offices of the [defendant's] attorney . . . if closing does not occur prior to June 15, 1987, all monies shall be returned to [the plaintiff].

"11. Default by [the plaintiff]. If the [plaintiff] defaults or fails to comply . . . ."

While we agree that the defendant is liable to the plaintiff for the return of the plaintiff's deposit, we do not agree that MacKenzie was acting as an escrow agent for the benefit of both the plaintiff and the defendant. As a matter of law, because MacKenzie was the defendant's attorney and agent, no escrow was established.

In Connecticut, where, pursuant to an agreement, money is left in the hands of the attorney or agent of one of the parties, the money is not delivered in escrow. See *Shelinsky* v. *Foster*, 87 Conn. 90, 94, 87 A. 35 (1913); *Grilley* v. *Atkins*, 78 Conn. 380, 387, 62 A. 337 (1905). We look to one of our sister states for a more modern

application of this long held principle of law. See *Paul v. Kennedy*, 376 Pa. 312, 102 A.2d 158 (1954).

In *Paul*, the defendant seller employed an agent to obtain a buyer for his business. In response to an advertisement placed by the agent, the plaintiff buyer delivered a down payment to the agent who thereafter prepared a written agreement, which was signed by the seller. The agreement required the plaintiff to pay the balance of the purchase price to the agent when he executed the agreement. The agent was to hold the money in escrow until the defendant obtained permission from the state to sell his business. The defendant failed to obtain the necessary approval prior to the agent's embezzling the money paid by the plaintiff. The Pennsylvania Supreme Court affirmed the trial court's decree for the plaintiff saying that " 'where one of two innocent persons must suffer from the wrongful act of a third, the loss should be borne by him who put the wrongdoer in a position of trust and confidence and thus enabled him to perpetrate the wrong.' . . . *Franklin Fire Ins. Co.* v. *Bradford*, 201 Pa. 32, 38, 50 A. 286 [1901]." *Paul* v. *Kennedy*, supra, 376 Pa. 317.

In support of her conclusion that the defendant was individually liable to the plaintiff for the deposit, the attorney trial referee properly cited the general rule "that the acts of an attorney are imputed to a client when they are performed in the furtherance of the business for which the attorney has been retained." *Allen* v. *Nissley*, 184 Conn. 539, 542–43, 440 A.2d 231 (1981). Although there was no evidence before the referee that MacKenzie embezzled the plaintiff's deposit,[4] MacKenzie was the defendant's agent and drafted the contract of sale designating himself as the person to receive the deposit. The defendant ratified the acts of his attorney

[4] At oral argument, the parties agreed that neither of them has asked MacKenzie to return the plaintiff's deposit.

by signing the contract.[5] Therefore, the trial court properly affirmed the referee's report.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] The defendant argues that the contract contained no promise that he, individually, would return the deposit because the contract merely states that "all monies shall be returned to Buyer." The defendant further claims that because he never received the funds from his agent, MacKenzie, he is not individually liable. The defendant misconstrues the law of agency. The acts of an agent are imputed to his principal, and a principal may not use his agent as a shield when the agent acts within the bounds of his authority. See *Son* v. *Hartford Ice Cream Co.*, 102 Conn. 696, 700–701, 129 A. 778 (1925); *Mullen* v. *Horton*, 46 Conn. App. 759, 764, 700 A.2d 1377 (1997).

[6] "Where the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it." *Morris* v. *Costa*, 174 Conn. 592, 597–98, 392 A.2d 468 (1978).