In re MUSHROOM TRANS-
PORTATION CO., INC.,
et al., Debtors.

Jeoffrey L. Burtch, Trustee, et
al., Plaintiffs–Appellants,

v.

Jonathan Ganz, et al., Defendants–
Appellees.

Bankruptcy No. 85–02575.
Adversary Nos. 94–3, 92–1043.
CIV.A. No. 99–3144.

United States District Court,
E.D. Pennsylvania.

Sept. 4, 2002.

Kent Cprek, Sagot, Jennings and Sigmond, Philadelphia, PA, for plaintiffs.

Andrew F. Napoli, Hochberg Napoli Diamond, P.C., James R. Kahn, Margolis, Edelstein and Scherlis, Walter Weir, Jr., Weir and Partners, Edward I. Swichar, Ann E. Kim, Blank Rome Comiskey & McCauley LLP, Ernest J. Bernabei, III, Harvey, Pennington, Herting and Renneisen, Ltd., Philadelphia, PA, for defendants.

David N. Bressler, Kaplin, Stewart, Meloff, Reiter and Stein, P.C., Blue Bell, PA, pro se.

Frederick Baker, Sr. Asst. U.S. Trustee, Philadelphia, PA, pro se.

Jeoffrey Burtch, Trustee, Wilmington, DE, pro se.

Richard L. Hahn, Bala Cynwyd, PA, pro se.

Pace Reich, Pace Reich, PC, Elkins Park, PA, pro se.

Andrew D. Tepper, Klehr, Harrison, Harvey, Branzburg & Ellers, Philadelphia, PA, for Home Insurance Company.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiffs below Jeoffrey L. Burtch, trustee in the bankruptcy of Mushroom Transportation Company, Inc., Michael C. Arnold,[1] Robbey Realty, Inc., Penn York Realty Co., Inc., Trux Enterprises, Inc., and various pension funds and their administrators [hereinafter collectively referred to as "plaintiffs"] appeal several Orders of the United States Bankruptcy Court granting summary judgment in favor of defendants below, Pincus, Verlin, Hahn & Reich, P.C., Pincus, Reich, Hahn, Dubroff & Ganz, P.C., Pincus, Verlin, Bluestein, Hahn, & Reich, P.C. ("PVHR"),[2] Continental Bank ("Continental Bank"), and Richard L. Hahn, Pace Reich, Jerome J. Verlin, Andrew F. Napoli, Herman Weinberg, David Bressler, Allen B. Dubroff, and Erwin L. Pincus ("shareholders") [collectively referred to as "defendants"].[3] This court has appellate jurisdiction over this matter pursuant to 28 U.S.C. § 158(a). For the reasons that follow, the Bankruptcy Court's orders granting summary judgment in favor of all defendants will be affirmed.

## I. BACKGROUND

The storied background of the dispute between the litigants, now in its fifteenth year, can be found in its essence in the Memoranda and Orders of Chief Bankruptcy Judge Bruce Fox dated August 24, 1998 and the Memorandum and Order dated October 1, 1999 and shall not be restated in its entirety here. At its core, however, is the theft of approximately one-half million dollars in estate property by the estate's attorney, Jonathan Ganz. While the fact of the theft is admitted, the responsibility for allowing it to occur is not so clear. The officers of the debtors, the bank, the law firms where Ganz was a partner, and the chapter 7 trustee point the finger of culpability at each other. Because the actions in this case were filed way past the period permissible under the applicable statute of limitations, the plaintiffs' actions can only survive if they are able to show that, despite the exercise of due diligence, they did not learn of the misappropriation until a much later date. The case thus raises the proverbial query of what did plaintiffs know and when did (or should) they know it. By way of background, the court offers the following factual scenario.

Mushroom Transportation Company and its related entities (jointly referred to as "Mushroom Company" or "debtors") filed for bankruptcy pursuant to chapter 11 of

---

**1.** Arnold is the former executive vice president and general counsel for Mushroom Transportation Company, Penn York Realty, and Trux Enterprises. On February 26, 1991, after the case had been converted to a chapter 7 proceeding, Arnold was appointed trustee. Arnold was later removed as trustee because of embezzlement of estate funds. It is Arnold's action while acting as an officer of the debtors while the debtors were in chapter 11 that are implicated in this case.

**2.** Although, technically, the plaintiffs have sued not only Pincus, Verlin, Hahn & Reich, P.C., but also successors of that firm, for purposes of this motion, the different identities of the law firms are not relevant.

**3.** Default has been entered against defendant Jonathan Ganz.

the Bankruptcy Code in June 1985. Upon filing of the chapter 11 petition, the Mushroom Company became the debtor in possession. By order of the Bankruptcy Court, the case of the parent company and all of the affiliates were to be jointly administered. Mushroom Company remained as debtor in possession until December 1990 when the case was converted to a chapter 7 proceeding. The relevant events here occurred while Mushroom Company was a debtor in possession under chapter 11.

As debtors in possession, Mushroom Company retained the legal services of Jonathan Ganz, Esquire, of the law firm of Pincus, Verlin, Hahn & Reich, P.C. ("PVHR") to act as counsel to the debtors in the chapter 11 bankruptcy proceeding. Within six months from the filing of the petition, however, the debtors ceased operating and began liquidating their assets. Arnold, as a Mushroom Company officer, was appointed "Special Liquidation Consultant" for the debtors in February 1986.[4] Under Arnold's leadership, the debtors liquidated a substantial portion of their assets. From the proceeds of these sales, the debtors began repayment of a large debt owed to Continental Bank, a secured creditor, who held a perfected security interest in all of the debtors' assets.

On June 16, 1986, after the debtors in possession repaid some, but not all, of their debt to Continental Bank, the Bankruptcy Court, with the consent of the parties, authorized the opening of an "escrow" account at Continental Bank to hold the balance of the proceeds generated from the sale of the debtors' assets not yet paid to Continental Bank.

In a letter to Ganz dated February 12, 1987, Arnold informed Ganz that he and Robert B. Cuatair, corporate president of Mushroom Company, were handling the day-to-day operations of the debtors. Although Arnold also requested via the letter an accounting of the proceeds of one of the realty sales and a report of the debtors' assets held by Continental Bank,[5] he informed Ganz that his involvement in the bankruptcy proceedings would be "further reduc[ed]" in March of 1987. Pl's.App., Vol. 3, 3077. Ganz responded to Arnold's letter on February 17, 1987 by informing Arnold that the account at Continental Bank held approximately $986,000 "in various escrow accounts," and that unspecified additional funds were held by PVHR in "escrow accounts" as well. Pl's.App., Vol. 3, 3078.

Pursuant to a Bankruptcy Court-approved stipulation in June 1987, Continental Bank was repaid the balance of its debt out of the funds held in the bank's escrow account. After payment to Continental Bank, the balance of the proceeds were to be transferred to and held in escrow by PVHR. In September 1987, at Ganz' urging, the Bankruptcy Court excused the debtors from the statutory requirement to file monthly operating statements.[6]

Unfortunately for the debtors and their creditors, during the transfer of funds

---

4. The appointment of Arnold as Special Liquidation Consultant in February 1986 was to last only six months, unless extended by the court. There is no record of any extension, and thus Arnold ceased serving as a Special Liquidation Consultant in August 1986.

5. Apparently, there were some funds held by PVHR at the time, but the disposition of these funds is not relevant to the instant case.

6. Pursuant to 11 U.S.C. § 704(8), a trustee shall "if the business of the debtor is authorized to be operated, file with the court ... periodic reports and summaries of the operation of such business...."

from the Continental Bank account to PVHR from June 1987 to April 1998, Ganz misappropriated more than one-half million dollars. The parties agree that Ganz completed his siphoning of estate funds by April 26, 1988.

From June 1987 (when the Bankruptcy Court approved the stipulation allowing the balance of the liquidation proceeds to be transferred from the Continental Bank account and placed in a new account with PVHR) until the beginning of 1992 (when Arnold actually learned of Ganz' defalcation), the attention of Arnold and Cutaiar was undisputedly elsewhere.[7] By Arnold's own declaration, both he and Cutaiar were involved in other business ventures and paid little attention to the debtors' affairs. Furthermore, according to Arnold, the marshaling and distribution of the debtors' assets were put on hold while the Bankruptcy Court considered motions to substantively consolidate the bankruptcy cases of the Mushroom Company and its affiliates. As Arnold concedes, to the extent that he and Cutaiar did work for Mushroom Company, they "spent most of [their] time over the next several years analyzing and resolving priority claims," Pl.'s App., Vol. 7, 7092, and filing claims against insurance carriers.

In either late 1987 or early 1988, at the prompting of counsel for the Official Committee of the Unsecured Creditors ("Creditors Committee"), Arnold sent another letter to Ganz requesting information about the status of the debtors' assets. Ganz responded to Arnold's request on February 2, 1988 by sending Arnold a copy of the June 1987 stipulation. Arnold followed up on Ganz' response on February 10, 1988 writing Ganz that the stipulation did "not clear up the problem of how much is being held and by whom." Pl.'s App., Vol. 3, 3094. Arnold further included his own estimates of the debtors' assets based on internal company records and requested that Ganz confirm the accuracy of this information. From Ganz' own testimony, though not memorialized in any written document, he and Arnold verbally communicated after Arnold's February 10, 1988 letter. During that conversation, Ganz told Arnold that the money was being held in certificates of deposit at various banks. This information turned out to be untrue. It is undisputed that Arnold, however, did not request written verification of Ganz' representation or otherwise take any steps to confirm its accuracy.

In January 1992, the Bankruptcy Court approved the substantive consolidation of the Mushroom Company and the affiliates. At that point, Arnold was prepared to distribute the proceeds from the sale of the debtors' assets and called Ganz to request that Ganz start liquidating the certificates of deposits and escrow accounts supposedly held on behalf of the Mushroom Company and its affiliates by PVHR. Arnold received no response from Ganz to these requests. At the end of February 1992, the United States Trustee advised Arnold that Ganz was reportedly involved in the defalcation of other bankruptcy estates where he had acted as counsel. Upon making further inquiries, Arnold discovered that Ganz had absconded with the Mushroom Company estate funds under Ganz' control. Thus, the plaintiffs contend that Arnold first learned of the Ganz misappropriation in February 1992, approximately four years after Arnold's initial inquiry to Ganz.

### A. Adversary No. 92–1043

On October 5, 1992, the Mushroom Company trustee (at this time, Arnold) filed this adversary action against Ganz and

---

7. In December of 1990, Mushroom's chapter 11 bankruptcy was converted to a chapter 7.

PVHR. The trustee later sought to add Continental Bank as a defendant. Although the Bankruptcy Court permitted the trustee to amend the action to add Continental Bank, the Bankruptcy Court declined to relate the amendment of Continental Bank back to the date of the original complaint. The court also denied a motion by the trustee to amend the complaint to add the individual shareholders, i.e. partners, of PVHR. Furthermore, the Bankruptcy Court declined to permit the pension plans or their administrators to join as plaintiffs in this matter.

### B. Adversary No. 94–0003

On January 3, 1994, plaintiffs filed a virtually identical adversary action against Ganz, law firms, the shareholders, and Continental Bank. This action includes the parties that were not permitted to be added or joined by the Bankruptcy Court in the 1992 adversary action.

The complaints in both cases asserted the following counts that are relevant to the instant matter: [8] Count I (by the trustee against PVHR and Ganz seeking a "turnover" of estate property); Count II (by the trustee against PVHR alleging a breach of fiduciary duty based on their position as escrow agent); Counts III and V (by the trustee against Continental Bank asserting a breach of fiduciary duties for releasing estate property to Ganz and for wrongful conversion of the estate property); Count VI (by the trustee against PVHR and Continental Bank alleging breach of contract for violating the June 1987 stipulation or any other implied contract); Count VII (by the trustee against the shareholders of PVHR alleging failure to exercise reasonable care to ensure that the lawyers within their firms safeguarded client assets); and Count VIII (by the trustee and the pension funds and administrators against PVHR and Continental Bank claiming that these defendants violated fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") as custodians of plan assets).

Defendants moved for summary judgment on all counts in both adversary proceedings, asserting, inter alia, a statute of limitations and a laches defense. In granting defendants' motion, the Bankruptcy Court found that Count I was barred by laches, Counts II–III and V–VII were barred by the applicable statute of limitations, respectively, and that plaintiffs failed to state a claim in Count VIII.[9]

## II. STANDARD OF REVIEW

In bankruptcy cases, the district court sits as an appellate court. *See In re Top Grade Sausage, Inc.*, 227 F.3d 123, 125 (3d Cir.2000). Bankruptcy Rule of Procedure 7056 imports into an adversary proceeding the summary judgment standard developed under Federal Rule of Civil Procedure 56. *See Pettit v. Smith*, 241 B.R. 847, 849 (E.D.Pa.1999) (citing Bank.R. 7056).

In reviewing the Bankruptcy Court's decision as to whether to grant or deny summary judgment, the district court's standard of review is plenary. *See*

---

**8.** One count, Count IV, brought against Ganz, is not relevant to this matter.

**9.** The law firms did not move for summary judgment with respect to Count VI in Adversary No. 92–1043, and the bankruptcy court thus held that, as to that count, trial would be held. Nevertheless, the law firms did move for summary judgment with respect to the identical Count VI in Adversary No. 94–3. Because the claims are identical and the plaintiffs have had an opportunity to respond, the court will consider the law firms' motion with respect to Count VI in Adversary No. 94–3 to include a motion for summary judgment with respect to Count VI in Adversary No. 92–1043.

*Rosen v. Bezner,* 996 F.2d 1527, 1530 n. 2 (3d Cir.1993). In an adversary proceeding, summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Bailey v. United Airlines,* 279 F.3d 194, 198 (3d Cir.2002). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must accept the non-movant's version of the facts as true and resolve conflicts in the non-movant's favor. *See Big Apple BMW, Inc. v. BMW of N. Amer., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot simply rest on its pleadings. *See* Fed.R.Civ.P. 56(e). A non-moving party "will not be able to withstand a motion for summary judgment merely by making allegations; rather, the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." *In re Ikon Office Solutions, Inc.,* 277 F.3d 658, 666 (3d Cir.2002).

## III. DISCUSSION

### A. *The Applicable Statute of Limitations*

■ The defendants argue that the plaintiffs' claims are barred by the applicable statute of limitations. The choice of the applicable statute of limitations is a question of law. However, "[w]hether the [applicable] statute has run on a claim is usually a question of law for the trial judge, but where the issue involves a factual determination, the determination is for the jury." *Hayward v. Med. Ctr. of Beaver County,* 530 Pa. 320, 608 A.2d 1040 (1992).

■ As the Bankruptcy Court soundly explained in its memoranda of August 24, 1998 and October 1, 1999, regardless of whether Pennsylvania or federal law [10] applies to Counts II and III (breach of fiduciary duty), V (wrongful conversion), and VII (negligence) in each adversary proceeding, these counts, which sound in tort, are governed by a two-year statute of limitations. *See Bigansky v. Thomas Jefferson Uni. Hosp.,* 442 Pa.Super. 69, 76, 658 A.2d 423, 426 (Pa.Super.Ct.1995) (two year statute of limitations for negligence); *Bednar v. Marino,* 435 Pa.Super. 417, 426, 646 A.2d 573, 578 (Pa.Super.Ct.1994) (two year statute of limitations for conversion); *Maillie v. Greater Delaware Valley Health Care, Inc.,* 156 Pa.Cmwlth. 582, 590, 628 A.2d 528, 532 (Pa.Cmwlth.Ct.1993) (two year statute of limitations for breach of fiduciary duty). Likewise, Count VI in each adversary proceeding, which claims breach of contract, is subject to a four-year statute of limitations. *See Sadtler v. Jackson—*

---

**10.** As the Bankruptcy Court noted, Counts II–III and V–VI are state law cause of actions brought pursuant to Pennsylvania law. Nevertheless, even in the event that they are derived from federal common law as a result of this bankruptcy proceeding, and in the absence of a specific applicable federal statute of limitations, a federal court " 'borrows' or 'absorbs' the local time limitations most analogous to the case at hand." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 355, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).

*Cross Co.*, 402 Pa.Super. 492, 498, 587 A.2d 727, 730 (Pa.Super.Ct.1991)(four year statute of limitations for an action upon an express contract not founded upon an instrument in writing).

■ Count I in both adversary proceedings is a turnover claim under 11 U.S.C. §§ 542, 543, which is based in equity and subject to laches. The analogous action at law for Count I, 11 U.S.C. § 549(d), has a statute of limitations of two years. Count VIII in each adversary proceeding was brought pursuant to ERISA, and it is subject to a six-year statute of limitations. *See* 29 U.S.C. § 1113(1). The court concludes that the Bankruptcy Court correctly chose the applicable statute of limitations that governs the timeliness of each of the plaintiffs' claims.

■ Having determined that the applicable statute of limitations selected by the Bankruptcy Court as to each count in this case is correct, the court must now determine when the applicable statute started to run. For those counts sounding in tort, Counts II, III, V and VII, "the statute of limitations begins to run ... when the cause of action accrues, meaning the date the injury is sustained." *Larthey v. Bland*, 367 Pa.Super. 67, 70, 532 A.2d 456, 458 (Pa.Super.Ct.1987). For the breach of contract claim, Count VII, a cause of action "accrues when the contract is breached." *Sadtler*, 402 Pa.Super. at 499, 587 A.2d at 731. For Count I, the analogous statute of limitations period under 11 U.S.C. § 549(d) starts to run upon the date of the transfer sought to be avoided. *See* 11 U.S.C. § 549(d); *In re Home Am. T.V.-Appliance Audio, Inc.*, 232 F.3d 1046, 1051 (9th Cir.2000). Count VIII, brought under 29 U.S.C. § 1109, starts to run on the "the date of the last action which constituted a part of the breach or violation." *Montrose Med. Group Partici-*

*pating Sav. Plan v. Bulger*, 243 F.3d 773, 787 (3d Cir.2001) (citing 29 U.S.C. § 1113).

The Bankruptcy Court found that for the tort claims, the date the injury occurred was, as to Continental Bank, no later than August 1987, when it transferred the funds pursuant to the June 1987 stipulation, and as to PVHR (and the shareholders), no later than April 1988, when Ganz had completed his theft from the estate. For the breach of contract claim, the Bankruptcy Court found that the breach of the contract occurred in August 1987, at the time that the funds were transfer by Continental Bank to Ganz. The Bankruptcy Court also found that for the turnover claim, the analogous statute of limitations period would run, at the latest, from April 1988, the date by which Ganz had completed his misappropriation. Similarly, the Bankruptcy Court found that the last day of the breach or violation of ERISA would have occurred on April 1988, the date on which the defalcation was completed.

The undisputed facts of record show that Continental Bank had completed the transfers of funds pursuant to the June 1987 stipulation by August 1988 and that Ganz had completed the funneling of estate proceeds to his own account by April 26, 1988. Plaintiffs did not file suit until October 5, 1992 (Adversary No. 92–1043) and January 3, 1994 (Adversary No. 94–004). Therefore, Counts II, III, V, VI, and VII in each adversary action are time-barred. Finally, unless the plaintiffs can rebut the presumption of prejudice to the defendants, Count I in each proceeding would also be barred by the doctrine of laches.

The plaintiffs raise several arguments to avoid the fatal consequences of defendants' statute of limitations and laches defenses. One, the plaintiffs argue that the statute of limitations for the various counts did not

start to run until January 1992 for PVHR and December 1992 for Continental Bank because the defendants were trustees of an express trust and the statute of limitations for claims arising out of the breach of an express trust does not start to run until repudiation of the trust. Two, that even if the statute of limitations had started to run in 1988, the statute should be tolled until February 1992, when the trustee first discovered Ganz' misappropriation of the funds, pursuant to the discovery rule and the equitable tolling doctrine.

With regard to their tolling argument, the plaintiffs raise two alternative theories. First, the officers of the debtor, Arnold and Cutaiar, were not themselves the debtors in possession and, therefore, had no duty to safeguard the assets of the estate, presumably until Arnold was appointed trustee in February 1991. This is so, according to plaintiffs, because the Bankruptcy Court, pursuant to the June 16, 1986 order and the court-approved June 1987 stipulation, had vested the legal authority for safeguarding the assets of the debtors with Continental Bank and PVHR, as escrow agents. Second, even if Arnold and Cutaiar were agents of the debtors, whose conduct could be imputed to the debtors in possession, and their duty did not terminate upon the appointment of Continental Bank and PVHR as escrow agents, the debtors reasonably delegated and relied upon their attorney to safeguard the assets of the estate, and accordingly, were diligent for purposes of the tolling doctrines. Thus, according to plaintiffs, their suits filed in October 1992 and January 1994 are timely.

### 1. *Express Trusts and Escrow Agreements*

The plaintiffs claim that the Bankruptcy Court order and approved stipulation of June 1986 and June 1987, respectively, created an express trust with Continental Bank and PVHR as trustees. The defendants counter that the court order and approved stipulation merely approved the creation of an escrow account with Continental Bank and PVHR as escrow agents.

The Pennsylvania Supreme Court had held that in an action to recover for breach of an express trust, the statute of limitations runs from the date the trust is repudiated by the trustee. *See In re Shelley's Estate*, 287 Pa. 105, 113, 134 A. 468, 471 (1926); *Pennsylvania Co. for Ins. on Lives v. Ninth Bank & Trust Co.*, 306 Pa. 148, 154-55, 158 A. 251, 253 (1932). If Continental Bank and PVHR were trustees of an express trust, or perhaps multiple express trusts, then the statute of limitations would start to run from the date Continental Bank and PVHR repudiated that trust or multiple trusts and not from the date the funds were transferred. Thus, the court must first determine whether the June 1986 order and the June 1987 stipulation created an express trust or multiple trusts.

When the debtors began liquidating the assets of the estate in January 1986, the proceeds from the liquidation of assets were remitted to Continental Bank to reduce the debt owed to the bank. In June 1986, after the Creditors Committee filed a motion for substantive consolidation and a motion for marshaling, the payments to Continental Bank stopped and the proceeds from various real estate transactions were deposited in an escrow account at Continental Bank pending resolution by the Bankruptcy Court of the pending motions. On June 16, 1986, by agreement of the parties, the Bankruptcy Court ordered that:

The sale of the Oil City Terminal by "The Mushroom Transportation Company, Inc." to Lyons Transportation Lines, Inc. for $130,000 is approved free and

clear of all liens and encumbrances and that the proceeds of said sale shall also be held in an escrow account in Continental Bank with interest under and subject to the liens of Continental Bank, if any; and it is further ORDERED that the escrow funds shall be held by the bank until the final Order is entered on the consolidation and marshalling [sic] motions currently pending before this Court.

Pl.'s App., Vol. 6, 6378. One year later, in June 1987, when it appeared that the funds in escrow at Continental Bank exceeded the balance owed to the bank by the debtors, the debtors (represented by Ganz), the estate of Robert Cutaiar (a shareholder and officer of the debtor),[11] Continental Bank and the Creditors Committee reached the following agreement, which provided in relevant part:

Upon payment to Bank of the balance of the Debt, the remaining escrow funds shall be turned over to Debtor's counsel, Pincus, Verlin, Hahn & Reich, P.C. to be held in escrow for the benefit of the Debtor's estate.

Pl.'s App., Vol. 6, 6522. The stipulation was approved by the Bankruptcy Court. The plaintiffs argue that the order and stipulations read together created an express trust (or two express trusts), with Continental Bank and PVHR acting as trustees.

"A trust ... is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." *In re Miners' and Laborers' Beneficial Fund of Philadelphia and Reading Coal &*

*Iron Co.,* 445 Pa. 65, 72–73, 282 A.2d 688, 692 (1971) (quoting Restatement (Second) Trusts, § 2 (1959)). Thus, under an express trust, where a donor transfers property to a third person as a trustee, the trustee obtains legal title to the property. *See Schellentrager v. Tradesmens Nat'l Bank & Trust Co.,* 370 Pa. 501, 504, 88 A.2d 773, 774 (1952); *Estate of Smith,* 144 Pa. 428, 435–36, 22 A. 916, 917 (1891).

In contrast, under an escrow agreement, the depositor retains legal title to the escrow funds, and title does not transfer until the performance of the escrow conditions. *See Paul v. Kennedy,* 376 Pa. 312, 315, 102 A.2d 158, 159 (1954); *see also Knoll v. Butler,* 675 A.2d 1308, 1312 (Pa.Cmwlth.Ct.1996), *aff'd* 548 Pa. 18, 693 A.2d 198 (1997). "An escrow is a deed or other instrument importing an obligation deposited with a third party to be held by that party until the performance of a condition or the happening of an event and then delivered to take effect." *Angelcyk v. Angelcyk,* 367 Pa. 381, 384, 80 A.2d 753, 756 (1951). In an escrow agreement, the depositary is considered an agent for both parties and is bound by the terms of the agreement. *See Paul,* 376 Pa. at 315, 102 A.2d at 159.

The exact line between an escrow depositary and a trustee is more nice than bright and on occasion courts have used both terms interchangeably. For example, in *Paul,* the Pennsylvania Supreme Court noted that the depositary's relationship is that of "an agent (or trustee) for both parties." Similarly, in *In re 222 Liberty Assocs.,* 110 B.R. 196, 201 (Bankr.E.D.Pa. 1990), the court, applying Pennsylvania law, explained that the "depositary's duties have also been likened to that of the trust-

---

**11.** This Robert Cutaiar is not the same from the Robert B. Cutaiar who served as corporate president of Mushroom and who, with

Arnold, handled the day-to-day operations of the debtors.

ee of an express trust with duties to perform for each of the parties."

It is true that the roles of a depositary under an escrow agreement and a trustee under an express trust are, indeed, similar and analogous, as both a depositary under an escrow agreement and a trustee hold property for another in a fiduciary capacity. *See e.g., Warehime v. Warehime,* 563 Pa. 400, 408, 761 A.2d 1138, 1142 (2000) ("a trustee is under a duty to the beneficiaries to administer the trust solely in the interest of the beneficiaries"); *Knoll,* 675 A.2d at 1312 ("An ordinary escrow agreement creates a fiduciary relationship between the agent and the transferor"). Nevertheless, their roles are distinct in one important respect in that the depository under an escrow agreement is an agent of the parties, who, unlike the trustee, does not hold title in the property. *See* 28 Am.Jur.2d, Escrow § 20 (2000); *see also In re First Capital Mortgage Loan Corp.,* 99 B.R. 462, 464 n. 1 (D.Utah 1987) ("At times courts also refer to escrow agents as 'trustees,' but in a strict sense an escrow agent is not a trustee because he does not hold legal title to the property entrusted to him"), *rev'd,* 872 F.2d 335 (10th Cir.1989), *panel decision vacated, district court aff'd,* 917 F.2d 424, 428 n. 3 (10th Cir.1990) (en banc) ("Significant authority exists for the proposition that an escrow holder is an agent with neither legal nor equitable title to the funds it holds in escrow").

There is thus a "fundamental difference between a trustee and an agent." *National Bank of Germantown & Trust Co. Appeal,* 156 Pa.Super. 650, 654, 41 A.2d 412, 414 (Pa.Super.Ct.1945).

Trustees and agents are distinguishable chiefly in the character in which they act and in the persons for whom they act. The agent, on the one hand, has the distinguishing features of his representative capacity and his derivative authority, and his acts are designed to be those of his constituent. On the other hand, a trustee is established and may be defined generally as a person in whom an estate, interest, or power in or affecting property is vested for the benefit of another. He is not an agent of the estate, nor is the latter his principal; rather, in his actions on behalf of the estate, he is himself the principal.

*Id.* at 654, 41 A.2d at 414 (citing 2 Am.Jur., Agency, § 6). These different roles impose different duties. The agent has the duty of loyalty to act only for the principal's benefit. *See Basile v. H & R Block, Inc.,* 563 Pa. 359, 761 A.2d 1115 (2000). The trustee's duties are more comprehensive, and include, in addition to the duty of loyalty to the trust beneficiaries, *see Warehime,* 563 Pa. at 408, 761 A.2d at 1142, the duty to exercise the care, skill and judgment with respect to trust property that an ordinarily prudent person would exercise. *See Estate of Stetson,* 463 Pa. 64, 74 n. 4, 345 A.2d 679, 684 n. 4 (1975); *see, e.g., Estate of Hamill,* 487 Pa. 592, 599, 410 A.2d 770, 773 (1980) (duty to not only protect and preserve trust assets but to make it productive); *In re Estate of Nesbitt,* 368 Pa.Super. 185, 197, 533 A.2d 1015, 1021 (Pa.Super.Ct.1987) (duty to keep clear and accurate accounts of trust property).

That the June 1986 order and the June 1987 stipulation never used the term "trust" to describe the relationship, while a factor to be included in the equation, does not preclude the court from determining that the parties intended the agreements of June 1986 and June 1987 to create one or two trusts. *See Buchanan v. Brentwood Federal Sav. & Loan Ass'n,* 457 Pa. 135, 143–44, 320 A.2d 117, 122–23 (1974). Rather, the court must look at the agreements "taken as a whole" to deter-

mine whether the agreements "evidence an intent ... 'to impose ... upon a transferee of the property equitable duties to deal with the property for the benefit of another person.'" *Id.*, 320 A.2d at 122 (quoting 1 A. Scott, Law of Trusts § 24, at 192 (3d ed.1967)). In other words, courts must search for the "powers and duties conferred," and not look solely at the precise words, phrases, or "title given" the instruments creating the relationship. *Id.* at 144, 320 A.2d at 122–23.

■ Upon review of the language of the June 1986 order and the June 1987 stipulation, in light of the surrounding circumstances and assessing the powers and duties conferred on Continental Bank and PVHR by the order and stipulation and considering both the June 1986 order and the June 1987 stipulation as a whole, the court concludes that the order and stipulation, whether alone or read together, do not create express trusts with the bank and the law firms acting as trustees.

Under the June 1986 order, the debtors deposited the proceeds not yet paid to Continental Bank from the sale of their property into an escrow account held by Continental Bank for the benefit of the estate. There is no indication that the language vested legal title on Continental Bank or that Continental Bank would hold legal title to the funds. In fact, prior to the June 1986 order, Continental Bank had received the funds from the liquidation of the estate outright as a creditor. All that the June 1986 order purported to do was to confirm that Continental Bank would hold the funds passively for the benefit of the debtors pending resolution of the mo-

tions to substantively consolidate and marshal assets.

In turn, the June 1987 stipulation merely authorized the complete repayment of funds owed Continental Bank from the funds it held in escrow. Further, upon Continental Bank's repayment of funds out of the escrow account it held, the remaining escrow funds were to be transferred to PVHR to be held in escrow. Under the June 1987 stipulation, legal title still remained with the debtors and PVHR was merely to hold the funds passively in an agency relationship as escrow agents for the benefit of the estate until further order of the Bankruptcy Court.

Since the June 1986 order and the June 1987 stipulation neither singly or jointly created an express trust, therefore, the statute of limitations started to run no later than April 26, 1988, the date of Ganz' final theft from the debtors' estate. The decision of the Bankruptcy Court, based on uncontested facts, that the parties did not create an express trust with Continental Bank and PVHR as trustees is thus legally correct.[12]

2. *The Equitable Tolling Doctrine, Discovery Rule, and a Defense to Laches*

■ Plaintiffs seek to avoid the consequences of the statute of limitations by pointing to the equitable doctrine of tolling, the discovery rule and laches. "'As a general rule, the statute of limitations begins to run when the plaintiff's cause of action accrues.'" *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1124–25 (3d Cir.1997) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38

**12.** Although the plaintiffs raised the issue concerning the creation of an express trust below, the Bankruptcy Court did not address the merits of the plaintiffs' argument directly. The court concludes, however, that the Bank-

ruptcy Court must have implicitly found that no express trust existed. Otherwise, the Bankruptcy Court could not have found in favor of the defendants.

F.3d 1380, 1385 (3d Cir.1994)); *see also Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983). Application of the discovery rule, however, acts to delay the initial running of the statutory limitations period. Under the discovery rule, the statute of limitations does not start to run until the "plaintiff has discovered or, by exercising reasonable diligence, should have discovered (1) that he or she has been injured, and (2) that this injury has been caused by another party's conduct." *Oshiver*, 38 F.3d at 1386; *see also Hayward v. Med. Ctr. of Beaver County*, 530 Pa. 320, 325, 608 A.2d 1040, 1043 (1992).[13]

■■■ In a somewhat similar vein, equitable tolling stops the running of the statute of limitations in light of established equitable considerations. *See Oshiver*, 38 F.3d at 1390. Equitable tolling may be appropriate "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.* at 1387. To invoke equitable tolling, a party must show that it exercised reasonable diligence in investigating and bringing its claims. *Id.* at 1390.

■■■ Typically, when laches is asserted as a defense, the defending party must show the plaintiff's failure to exercise due diligence and prejudice to the defending party resulting from the delay. *See Stilp v. Hafer*, 553 Pa. 128, 132, 718 A.2d 290, 292 (1998) (citing *Sprague v. Casey*, 520 Pa. 38, 45, 550 A.2d 184, 187 (1988)). Where, as here, the statutory period has expired, the burden of establishing reason-

able diligence under laches shifts to the plaintiff. *See E.E.O.C. v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir. 1984)

A common element to the discovery rule, the equitable tolling doctrine and the defense of laches, and the issue central to this case, is the requirement that the party seeking to assert it show that it exercised due diligence with respect to its claim.

Plaintiffs agree that Arnold (as well as Cutaiar) did virtually nothing to superintend the affairs of the debtors in general and to oversee Ganz' work in particular between 1986, when the funds from the liquidation of the debtors' assets were placed in the Continental Bank escrow account, and 1992, when the defalcations by Ganz were uncovered. In their defense, they claim that, although they were technically officers of the debtors, they were not "agents" of the debtors for purposes of satisfying the debtor in possession's duty to safeguard the assets of the estate. Regardless, Arnold and Cutaiar claim that whatever duty the debtors in possession owed to safeguard the assets of the estate, or they owed individually as officers of the debtors, were delegated to Ganz, an attorney retained by the debtors with the approval of the Bankruptcy Court to assist in the administration of the estate.

The plaintiffs contentions raise four issues: One, what is the obligation of the debtor in possession to preserve the assets of the estate? Two, did Arnold and Cutaiar act or fail to act as agents of the debtors in possession and, therefore, is the inaction imputable to the debtors? Three, did the debtors in possession acting through Arnold and Cutaiar exercise due diligence? And four, may the debtors in possession's duty to preserve the estates

---

**13.** The discovery rule does not differ between Pennsylvania law or federal common law.

*See Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir.1991).

assets be delegated to counsel for the estate?

### i. Duty to Preserve the Assets of the Estate

■ Upon the filing of the bankruptcy petition, a corporate debtor becomes the debtor in possession. *See* 11 U.S.C. § 1101(1). The debtor in possession has virtually the same rights and duties of a trustee and stands "in the shoes of a trustee in every way." *In re Coastal Group, Inc.*, 13 F.3d 81, 84 (3d Cir.1994).[14]

■ "The powers and duties of a bankruptcy trustee are extensive." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). Once a chapter 11 petition is filed, the property of the corporate debtor passes to the debtor's estate. 11 U.S.C. §§ 323, 541. The trustee is thus "accountable for all property received." 11 U.S.C. §§ 704(2), 1106(a)(1). Concomitant with that accountability, the trustee has the duty to maximize the value of the estate, *see* 11 U.S.C. § 704(1), and is directed to investigate the debtor's financial affairs. *See* 11 U.S.C. §§ 704(4), 1106(a)(3). Likewise, the debtor, as debtor in possession, is a fiduciary who has a " 'duty to protect and conserve property in its possession for the benefit of creditors.' " *In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 474 (3d Cir.1998) (quoting *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr.S.D.N.Y.1990)).

■ In the discharge of its duties, the debtor in possession must exercise reasonable diligence. *See In re Rigden*, 795 F.2d 727, 730 (9th Cir.1986). As one leading commentator has explained:

Trustees, like executors and administrators, must use reasonable diligence in the discharge of their duty to "collect and reduce to money the property of the estates for which they are trustees" and to secure possession of all property and to collect debts due.

6 Alan N. Resnick and Henry J. Sommer, Collier on Bankruptcy ¶ 704.04[1] at 704–9 (15th Ed. Rev.2002).

Thus, in this case, as the Bankruptcy Court found, Mushroom Company and its affiliates, as debtors in possession, owed a duty to exercise reasonable diligence to protect and safeguard the proceeds from the sale of the debtors' assets deposited in the Continental Bank account in 1986.

### ii. Arnold and Cutaiar as Agents of the Debtors

■ The "debtor" in this case was the corporate entities Mushroom Transportation Company and its affiliates. Cutaiar and Arnold served as president and executive vice president, respectively, of the Mushroom Company. A corporation is a legal fiction, with no ability to act unless though its individual officers and employees. *See, e.g., In re Am. Biomaterials Corp.*, 954 F.2d 919, 923 (3d Cir.1992); *Fetterolf v. Harcourt Gen., Inc.*, Civ. A. No. 01–112, 2001 WL 1622196, at *3, 2001 U.S. Dist. LEXIS 21006, at *10 (E.D.Pa. Dec. 17, 2001); *Ashley v. Ashley*, 482 Pa. 228, 237, 393 A.2d 637, 641 (1978). Ordinary principles of agency apply to the relationship between an officer or employee and a corporation operating under chapter 11 unless, in the appropriate case, the rules of agency are superceded or modified by the Bankruptcy Code or an order of the Bankruptcy Court. *See, e.g.,*

---

**14.** Since, prior to the conversion to chapter 7, the estate qualified as a debtor in possession and had identical duties as that of the trustee, the court shall use the terms "debtors in possession" and "trustee" interchangeably.

Nevertheless, upon conversion to chapter 7 and the appointment of a chapter 7 trustee, the trustee became the sole representative of the estate. *See Donaldson v. Bernstein,* 104 F.3d 547, 554 (3d Cir.1997).

*Strang v. Bradner,* 114 U.S. 555, 560, 5 S.Ct. 1038, 29 L.Ed. 248 (1885) (applying agency principles to determine that misconduct of a third party could be imputed to a debtor). Central to these notions is the concept that the acts or inaction of an employee or officer acting within the scope of his employment can be imputed to the corporation.[15] *See Valles v. Albert Einstein Med. Ctr.,* 805 A.2d 1232, 1237, 2002 Pa. LEXIS 1783, at *13 (Pa.2002) (a master may be held liable for the acts of the servant when those acts are committed during the course of his employment and within the scope of his authority).

In this case, as Arnold explains in his declaration, as of January 1, 1987, the estate staff consisted of he and Cutaiar, as well as two part-time secretaries. At the end of that year, however, the secretaries had ceased working for the debtors, and the personnel left consisted of "only Bob and me." Pl.'s App., Vol. 7, 7089. His declaration is consistent with his February 12, 1987 letter to Ganz, in which he explained that he and Cutaiar were handling the day-to-day operations of the debtors, including bookkeeping. Arnold signed that letter, written on Mushroom Transportation Company stationary, as executive vice president. Likewise, Arnold signed his February 10, 1988 letter to Ganz, also written on Mushroom stationary, as executive vice president. Although Arnold's appointment as Special Liquidation Consultant had apparently expired July 31, 1986, Arnold continued to serve as an officer of the debtors, as evidenced by his own declaration and his communications with Ganz, beyond that date. Since a corporation can act only though its officers, and Arnold was an officer of the debtors, acting within the scope of his agency, at the relevant time, his actions can be imputed to the debtors.[16]

---

**15.** The trustee, in his reply brief, contends that the individual officers of the bankrupt entity are not equated to the "debtor" or "debtor in possession" unless specifically designated by the Bankruptcy Court pursuant to Bankr.Rule 9001(5). Bankruptcy Rule 9001(5), which is incorporated into the "general definition" section of the Bankruptcy Rules, provides:

When any act is required by these rules to be performed by a debtor or when it is necessary to compel attendance of a debtor for examination and the debtor is not a natural person: (A) if the debtor is a corporation, debtor includes, if designated by the court, any or all of its officers, members of its board of directors or trustees or of a similar controlling body, a controlling stockholder or member, or any other person in control.

Assuming that his argument is not waived for failing to assert it in his original brief to the court, the trustee does not identify any action required by the rules that would trigger this provisions. The debtor's duties and obligations, including the duty to safeguard assets, flow not from the rules, but from the Bankruptcy Code, which defines "debtor" as "person or municipality concerning which a case under this title has commenced." 11 U.S.C. § 101(13). Under this definition, person includes a corporation. *See* 11 U.S.C. § 101(41). Nothing in the Bankruptcy Code nor the Bankruptcy Rules overrides the law of agency and the well settled principle that the action or inaction of an officer or employee of a corporation within the scope of his agency or employment can be imputed to the corporation.

**16.** In a parallel case, *In re Mushroom Transp. Co., Inc.,* 247 B.R. 395 (E.D.Pa.2000), Judge Reed addressed on appeal the trustee's suit against Security Pacific Bank Oregon, an entity that had received funds from Ganz that were traceable to the bankruptcy estate. In that case, as in this one, the bankruptcy court concluded that the statute of limitations period had run and that tolling was not appropriate. Although Judge Reed concluded that whether the trustee had exercised due diligence was a question for the jury, Judge Reed found that Arnold and Cutaiar were, indeed, the appropriate focus of whether the debtor in possession acted diligently:

Nor, as the trustee argues, did the creation of escrow accounts at Continental Bank or PVRH change or alter the obligations or authority of the debtors, here acting through Arnold and Cutaiar. As the Bankruptcy Court explained, the stipulation of June 1987 (or, for that matter, the June 1986 order), "contained no provision eliminating the debtor's statutory role as fiduciary for the bankruptcy estate." Pl.'s App., Vol. 1, 1056. Even more poignant, the June 1986 order and the June 1987 stipulation did not grant statutory authority to Continental Bank or PVHR to act on behalf of the debtors. If the Bankruptcy Court intended either Continental Bank or PVHR to act as trustee of the estate, the Bankruptcy Court had the authority to appoint either, or both, as chapter 11 trustee. The Bankruptcy Court was not requested to do so and, in fact, did not. To the contrary, the order and stipulation provided only that Continental Bank and PVHR would hold certain funds for the benefit of the estate.

Arnold's own actions provide support for the conclusion that the debtors, acting through Cutaiar and Arnold, retained authority and responsibility for the estate and that he did not consider the June 1987 stipulation to abrogate his authority to act on behalf of the estate. When Ganz informed him of the stipulation in February 1988, he followed up with Ganz seeking an accounting of those funds, presumably with the understanding that, as an officer of the debtors, he had a responsibility over these funds. Thus, for all of these reasons, the court concludes that there is no genuine issue of material fact as to whether Cutaiar and Arnold, at all relevant times, had the legal authority to act for the debtors in possession.

### iii. *Breach of Duty to Exercise Due Diligence*

In satisfaction of this duty of care, the debtors in possession, acting through Arnold (and Cutaiar), did virtually nothing. In late 1987, in response to a query by counsel for the Creditors Committee, Arnold sent a letter to Ganz requesting information about the debtors' assets. Ganz responded by sending Arnold a copy of the June 1987 stipulation. Arnold followed up on Ganz' response by sending him another letter advising Ganz that the stipulation did not clear up the problem of how much was being held and by whom. Arnold further included various estimates of assets based on internal company records and requested that Ganz confirm the information. Ganz and Arnold then had only one conversation during which Ganz told Arnold that the money was in certificates of deposit at various banks.[17] Arnold apparently neither requested nor received written confirmation of Ganz' representation and did nothing else until February of 1992, when the defalcations were discover-

While I understand that technically the debtors in possession were the Mushroom corporation and its affiliate corporations, such corporate entities can act only through people, and Arnold and Cutaiar were apparently the only remaining officers of Mushroom in the late 1980s. Thus, the Court has no choice but to look to the conduct of the individual officers to ascertain whether reasonable diligence was exercised, and because there is little evidence on the record concerning Cutaiar, Arnold is all that is left.

*Id.* at 403 n. 13.

17. The Bankruptcy Court did not consider the follow-up phone call allegedly made by Arnold, to which Ganz testified. Nevertheless, it is undisputed that, as the Bankruptcy Court found, Arnold never made any effort to obtain documents concerning the location and amounts of those funds and never sought information from another source, such as Continental Bank.

ed, and by which time Ganz had dissipated the debtors' funds.

■ In general, whether a party has exercised due diligence sufficient for either the discovery rule or equitable tolling is an issue of fact to be determined by the jury. *See Hayward,* 530 Pa. at 326, 608 A.2d at 1043. Nevertheless, "where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." *Id.*

■ In this case the facts are "so clear" that no genuine issue of material fact is present. Arnold had a statutory duty to safeguard the assets of the estate. Pursuant to that duty, he drafted two letters to Ganz, asking the whereabouts and the amounts of the assets of the estate, and upon receiving vague responses, followed up with one telephone call, during which Ganz represented that the estate funds were located in certificates of deposit at various banks. This inquiry, drawn out over a period of, at most, several months in early 1988, constituted the sole attempt of Arnold to determine the assets of the estate during nearly four years prior to February 1992. Despite knowing that there was nearly one and one-half million dollars in estate funds that had been placed in an account at Continental Bank under the care of Ganz, Arnold inconceivably sought no documents from Ganz or the bank confirming the existence and the precise amount of those funds. *See In re Summit Airlines, Inc.,* 160 B.R. 911, 924 (Bankr.E.D.Pa.1993) (noting, in another bankruptcy action involving the theft of funds by Ganz, amazement that the plaintiff in that case never missed nearly $500,000 in stolen funds until the defalcations were discovered).

Further unconvincing is plaintiffs' argument that the debtors' actions, or rather inaction, in preserving the assets originally held by Continental Bank, should be excused because Arnold and Cutaiar were involved in other areas of estate, such as filing claims with insurance companies and trying to recover receivables. Such involvement by Arnold and Cutaiar, as agents, even if true, would not absolve the debtors in possession of their duties to safeguard estate assets. At best, the delay or inattention due to other pressing business may constitute excusable neglect, which is insufficient to toll the statute of limitations. *See Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (excusable neglect not sufficient to invoke equitable tolling).

### iv. *Are the Duties Delegatable to the Attorney?*

Plaintiffs claim that, if they had a duty to exercise due diligence, they delegated that duty to Ganz, a licensed attorney the debtors in possession had retained with the approval of the Bankruptcy Court. It is reasonable to anticipate, indeed the Bankruptcy Code expressly provides for, that a debtor in possession, in the regular course of business, will be required to delegate some of the sweep of its duties to others, including professionals. This is particularly true in a chapter 11 proceeding of almost any size. Indeed, lawyers, auctioneers, accountants or workout specialists, among others, are routinely hired in bankruptcy cases with the approval of the court to aid the debtor in possession. *See* 11 U.S.C. § 327 (providing for court approval of professionals retained by the debtor); 11 U.S.C. § 329 (requiring attorneys to file a statement of compensation paid or agreed upon to be paid); 11 U.S.C. § 330 (providing for payment of professionals retained under § 327). The practice of delegating duties to qualified professionals promotes efficiency, economy, and is generally encouraged. *See In re*

*Mushroom Trans. Co.*, 247 B.R. 395, 401 n. 11 (E.D.Pa.2000) (Reed, J.) (collecting cases).

 Although delegation of duties is one thing, abdication of responsibility is quite another. In this case, the debtors not only "delegated" to Ganz the duty to collect the funds generated from the sale of assets, deposit them into the escrow account pursuant to an order of the court, and transfer the funds to the law firm account to be maintained pending further order of the Bankruptcy Court, but rather they surrendered totally their obligation to oversee the liquidation of the estate or to supervise, even in the most relaxed fashion, the activities of a retained professional.[18] The Bankruptcy Code commands the debtor in possession (or the trustee) to be the captain of the debtor ship. *See* 11 U.S.C. § 1108. While the debtor in possession may assign to others specific duties, it may not surrender the helm and let the debtor ship sail under someone else's captaincy.

In this case, the debtors in possession (acting through Arnold and Cutaiar) not only delegated duties to Ganz as a retained professional, but rather surrendered to Ganz, without authority of the court, the entire responsibility of liquidating the debtors' business and failed to adequately supervise Ganz' performance. Thus, they may not now claim that they satisfied their duty of due diligence by retaining Ganz.

 The court concludes that the debtors in possession, operating through Arnold and Cutaiar, had a statutory responsibility to safeguard the assets of the estate. Further, that they failed to exercise reasonable diligence in discharging this duty. Thus, they may not now rely on tolling of the statute of limitations through either the discovery rule or the doctrine of equitable tolling to expand the time for commencing this action. For the same reason, the court finds that laches is not available to plaintiffs.

Because the court determines that there is no genuine issue of material fact concerning the plaintiffs' failure to exercise due diligence, and that the defendants were entitled to judgment as a matter of law, the court finds that the Bankruptcy Court properly held that Count I was barred by laches and Counts II–III and V–VII were barred by the applicable statute of limitations. The Bankruptcy Court's order granting summary judgment with respect to these counts will therefore be affirmed.[19]

B. *The Viability of Plaintiffs' ERISA Claim*

 In Count VIII the plaintiffs assert that since the sole creditors of Robbey Realty, Penn York Realty and Trux, and some, but not all, of the creditors of Mushroom Transportation were employee pension benefit plans, Continental Bank and PVHR breached their fiduciary duty as custodians of the ERISA plan assets.[20]

---

**18.** To the extent that the debtors intended Ganz to act as de factor debtor in possession, the court order approving Ganz' employment as a professional did not contemplate such scope of authority.

**19.** Judge Reed, in the related matter, concluded that, as a matter of fact to be determined by the jury, a reasonable person in the circumstances of the Mushroom debtors in possession may rely on counsel to safeguard es-

tate assets. *In re Mushroom Trans. Co.*, 247 B.R. at 404. For the reasons stated, *supra*, the court respectfully disagrees.

**20.** The Bankruptcy Court raised "serious doubts" that the funds at issue in this case were even plan assets. *See Chapman v. Klemick*, 3 F.3d 1508, 1510 (11th Cir.1993). Because the court concludes, however, that neither Continental Bank nor PVHR are fiduciaries under 29 U.S.C. § 1109(a), the court

Title 29 U.S.C., Section 1109(a) creates liability for "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed upon fiduciaries by this subchapter." A person is a fiduciary of an ERISA plan to the extent that such person "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets. . . ." 29 U.S.C. § 1002(21)(A)(i).

In *Board of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Assocs., Inc.,* 237 F.3d 270, 272–73 (3d Cir.2001), the Third Circuit considered fiduciary status under § 1109(a)(i) and found significant the requirement that in order to be a fiduciary with respect to control or authority of plan management, such authority or control must be discretionary, but no such discretion is needed to confer fiduciary status on one with authority or control over plan assets. The court noted,

> A significant difference between the two clauses is that discretion is specified as a prerequisite to fiduciary status for a person managing an ERISA plan, but the word "discretionary" is conspicuously absent when the text refers to assets. This distinction is not accidental—it reflects the high standard of care trust law imposes upon those who handle money or assets on behalf of another.

*Id.* at 272. Citing with approval *IT Corp. v. General Am. Life Ins. Co.,* 107 F.3d 1415 (9th Cir.1997), the court pointed out that "any control over disposition of plan money makes the person who has the control a fiduciary." *Wettlin,* 237 F.3d at 273 (quoting *IT Corp.,* 107 F.3d at 1421).

In *IT Corp.,* the Ninth Circuit found that an administrator with check writing

need not determine whether the funds at is-

authority over funds received from an employer that were deposited in the bank account of the plan was a fiduciary. 107 F.3d at 1417. In turn, in *Wettlin,* the Third Circuit reversed the district court's dismissal under Rule 12(b)(6), as the plaintiff had alleged that the defendant had "day to day responsibility to control, manage, hold, safeguard and account for the funds assets and income." 237 F.3d at 275. Notably, however, the Third Circuit stated that it was "inclined to agree that ERISA does not consider as a fiduciary an entity such as a bank when it does no more than receive deposits from a benefit fund on which the fund draws checks," but given the allegations made by the plaintiff and the preliminary stage of the litigation, dismissal was not appropriate. *Id.*

Consistent with this approach, other courts have found that there needs to be some relationship to the plan itself, not merely control of some small amount of purported assets of the plan, before one may be considered an ERISA fiduciary. *See Southern Council of Indus. Workers v. Ford,* 83 F.3d 966, 968–69 (8th Cir.1996); *Hotel Employees & Restaurant Employees Int'l Union Welfare Fund v. Gentner,* 50 F.3d 719, 722–23 (9th Cir.1995); *Chapman v. Klemick,* 3 F.3d 1508, 1510–11 (11th Cir.1993). Specifically, possession of monies that may have originated in an ERISA fund is insufficient to make one a fiduciary of that fund. *See Chapman,* 3 F.3d at 1510–11. Although an attorney has a fiduciary duty to one's client, in order to be a fiduciary under ERISA to the plan, the representation must involve "the discretionary authority or control required by the statute's definition of 'fiduciary.'" *Custer v. Sweeney,* 89 F.3d 1156, 1162–63 (4th Cir.1996).

Plaintiffs advance no tenable argument claiming that PVHR or Continental Bank

sue are, indeed, plan assets.

committed any action or had any duties sufficient to meet the requirements of § 1109(a) for fiduciary status.[21] Although Continental Bank and PVHR, under the June 1986 order and the June 1987 stipulation, acted in a fiduciary capacity as escrow agents over the funds liquidated by the debtor upon the sale of various pieces of real property, serving in such a capacity does not, in itself, impose liability as an ERISA fiduciary. Continental Bank and PVHR merely held estate funds in escrow for the benefit of the creditors of the estate. *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 20 (1st Cir. 1998) (holding that the defendant bank, which held the plan assets in trust, but did not actively manage them nor retain any discretionary authority over the plan's real estate investments, was not an ERISA fiduciary). Neither Continental Bank nor PVHR possessed sufficient authority with respect to the distribution of those funds and in fact could only distribute the funds upon the order of the Bankruptcy Court.

Finally, the Bankruptcy Court's analysis with respect to the conflict inherent in any finding of ERISA liability in this case is also persuasive. In this case, the debtors in possession were fiduciaries on behalf of all creditors and shareholders of the estate. *See Matter of Ribs–R–Us, Inc.*, 828

F.2d 199, 203 (3d Cir.1987). Counsel to the debtors in possession also had such a duty to the estate, and, under the bankruptcy code, must be "disinterested" and hold no interest adverse to the estate. *See* 11 U.S.C. § 327(a). *See, generally, U.S. Trustee v. Price Waterhouse*, 19 F.3d 138, 141 (3d Cir.1994). Furthermore, Continental Bank and PVHR also had a duty to the entire estate by virtue of their role as escrow agents. *See Knoll*, 675 A.2d at 1312. To determine that Continental Bank and PVHR were thus fiduciaries of individual pension plans in this case would place Continental Bank and PVHR, who owe a duty to all creditors, not simply the individual pension plans, in a conflicted position. *See Southern Council of Indus. Workers*, 83 F.3d at 969; *Chapman*, 3 F.3d at 1511.

The court thus concludes that upon undisputed facts the Bankruptcy Court correctly held that Continental Bank and PVHR were not ERISA fiduciaries and thus cannot be liable for breach of fiduciary duty under 11 U.S.C. § 1109. Accordingly, the court affirms the Bankruptcy Court's dismissal of Count VIII of the amended complaint.

## IV. CONCLUSION

Under the circumstances of this case and for the reasons stated above, the or-

---

**21.** The plaintiffs contend that *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000), provides the authority to find the defendants liable under ERISA as non-fiduciaries. The court finds that *Harris Trust* is not applicable to the case at bar. In this case, the plaintiffs assert that the defendants are liable under a theory of breach of fiduciary duty. Such a cause of action explicitly requires that the defendants serve as ERISA fiduciaries. *See* 29 U.S.C. § 1109(a). In *Harris Trust*, the plaintiff asserted that the defendants were liable under an entirely different cause of action, pursuant to 29 U.S.C. § 1106(a), which prohibits ERISA fiduciaries from engaging in

prohibited transactions with a "party in interest." *Harris Trust*, 530 U.S. at 243, 120 S.Ct. 2180. In that case, the court rejected the argument of defendant Salomon Smith Barney that it could not be held liable under § 1106 because it was a non-fiduciary and held that the defendant, while not a fiduciary, could nonetheless be liable as a "party in interest" under § 1106. *Id.* at 245, 120 S.Ct. 2180. Plaintiffs have not asserted a cause of action under § 1106(a) against either Continental Bank or the law firm defendants as a "party in interest," but instead contend that the defendants are fiduciaries of an ERISA plan who breached their duties to the plan.

828

ders of the Bankruptcy Court dated August 28, 1998 and October 1, 1999 granting summary judgment in favor of defendants are affirmed.